## Loverett v. Veatch et al.

(Decided May 28, 1937.)

F. DOUGLASS CURRY and BACON R. MOORE for appellant.

C. E. RANKIN for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Our opinion on the first appeal of this case is reported in 265 Ky. 532, 97 S. W. (2d) 47, 49. It contains the facts as presented by that record. But additional pleadings filed, and evidence heard upon the second hearing, after the filing of the mandate from this court, slightly altered the facts as stated in the former opinion. However, the learned trial judge concluded that such alterations did not affect the proper determination of the legal issue involved and rendered judgment giving the beneficiaries of the estate of John T. Veatch, deceased, a superior lien over appellant, a creditor of one of his sons, who had procured an attachment against that son (Allen T. Veatch) and levied it on his undivided interest in his father's real estate that he inherited from his ancestor, the latter dying intestate. From that judgment appellant again appeals to this court, seeking a reversal thereof upon the ground that the amended pleadings—supported as he contends by proof taken and heard upon the last trial—destroys the principle upon which our former opinion was based, and forcing a different conclusion from the one therein reached. We deem it necessary for a clear understanding of the case to make an abridged statement of the facts as may be necessary to present the true picture.

The intestate, John T. Veatch, died on February 14, 1934. His wife predeceased him and the only beneficiaries of his estate surviving him were some children and grandchildren whose parents were dead. Among the former was Allen T. Veatch. Some years prior to 1925 he left the parent's home and, following his departure, he borrowed from his father the sum of $1,800. In the year mentioned, on account of some questionable involvement, it became imperatively necessary for him to raise $5,000. He and his banker—to whom he had issued a check drawn on his father without authority—appeared at the residence of the father in Mercer county, Ky. The facts concerning the matter were laid before him and he was asked by the son

to pay the check that the latter had so fraudulently issued. He finally agreed to do so and borrowed that amount for the purpose. According to the testimony of the son, taken since our former opinion, there was no written obligation of any kind given by him to his father at that time. He, the son, made this statement in his testimony relative to the agreement between him and his father at the time the check was paid: "The only agreement made at that time was that I should keep the interest paid on the note," but the only note at that time was the prior existing indebtedness of $1,800, less some small payments made thereon reducing it.

On December 7, 1927, Allen T. Veatch, the son, executed the note in litigation (which will hereafter be referred to as the "present note") for $6,601.49, which represented the balance due on the prior $1,800 note, plus the $5,000 obtained in 1925, and, possibly, the interest on all of it. There was indorsed on that (the present) note this language: "It is agreed and understood that if the interest and principal of this note is not paid to the said J. T. (John Thomas) Veatch during his lifetime then same (all interest then due and principal or balance due on principal) shall be deducted from my share in his estate." The facts as so briefly recited, and as presented only by pleadings, constituted the basis of our opinion on the first appeal, and which was arrived at by us by the process of reasoning therein employed. It need not be repeated here; except to say that it therein appeared that the present note was executed simultaneously with the advancement of the $5,000 by the father to the son—but which the later development of the case showed was slightly inaccurate inasmuch as no note was taken for the $5,000 at the time it was paid by the father for the benefit of the son, but it was incorporated in the present note executed about one month more than two years thereafter.

The learned trial judge in rendering the instant judgment did so upon the theory that the present note should be treated as an advancement under the principle announced in our former opinion and which should also govern us in the disposition of this appeal, if for no other reason than that the first opinion became "the law of the case," unless the slight change in the facts to which we have referred was sufficient to render the

"law-of-the-case" rule inapplicable. We are convinced that the change referred to cannot be given that effect, since at least a part of the consideration for the present note was a past contracted indebtedness, represented by the remaining unpaid portion of the $1,800 note of the son to the father. If that past consideration was sufficient to deny the application of the principle upon which we based our first opinion, then it was erroneous to the extent of giving the beneficiaries of John T. Veatch's estate any priority over appellant. However, we did not so determine, but impliedly held that such prior existing indebtedness, as part consideration for the execution of the present note, would not affect the right of the beneficiaries to a prior lien on the inherited interest of Allen T. Veatch in his father's real estate over appellant, the attaching creditor of the son for the whole of the present note.

Moreover, if both amounts—the prior $1,800 note and the later amount of $5,000 (each being prior to the execution of the present note)—should be considered as debts at the times of their creation, then it might be true that the execution of the present note at the date it was made constituted an agreement between the parties whereby such prior indebtedness was converted in such form as that the entire amount should be treated as an advancement under the principle applied in our former opinion. See American Jurisprudence, Volume 1, p. 741, sec. 65, and 18 C. J. 924, sec. 235. But for reasons already and to be hereinafter stated, we deem it unnecessary to determine that point.

In our former opinion, we discussed the superior right of the beneficiaries of an intestate ancestor to require those of them who are indebted to the estate to account for his debt in the distribution of the estate out of his interest by not sharing in either the personalty or realty of the ancestor until his indebtedness was paid. Such superior right over that of any encumbrancer of the indebted heir, or any other lienholder, upon his interest in his ancestor's real estate as well as his personal property, is most generally designated in the opinions as the right of "set off" or "the right of retainer," the latter designation being more frequently employed by the courts and textwriters because of the suggested distinction that the right of

"set-off" exists only when the obligations of both parties are technical debts, i. e., the obligation employed as a set-off against a debt should itself also be a debt, but which is not technically true as to the interest of an indebteded heir in his ancestor's estate, since the amount due him from the estate is not a technical debt of the estate to him.

But whatever may be the accurate name to be assigned to the principle, our former opinion pointed out that all courts adopt, approve, and apply it so as to give the other beneficiaries a prior lien upon the inherited personal property of the indebted beneficiary, but that some of them deny that right (set-off or retainer) as against the indebted beneficiary's interest in the inherited real estate. As shown in that opinion, the courts that apply the doctrine of the rights as to inherited personalty, but deny it as to inherited real estate, are Arkansas, Florida, Iowa, some cases from Kentucky, Massachusetts, Michigan, New Jersey, and Tennessee; whilst the cases that apply the doctrine also to inherited real estate are: Streety v. McCurdy (1894) 104 Ala. 493, 16 So. 686; Brown's Adm'r v. Mattingly (1891) 91 Ky. 275, 15 S. W. 353, 12 Ky. Law Rep. 869 (obiter); Trabue v. Henderson (1904) 180 Mo. 616, 79 S. W. 451; Wright v. Green (1912) 239 Mo. 449, 144 S. W. 437; Stenson v. H. S. Halvorson Co. (1913) 28 N. D. 151, 147 N. W. 800, 802, L. R. A. 1915A, 1179, Ann. Cas. 1916D, 1289; Keever v. Hunter (1900) 62 Ohio St. 616, 57 N. E. 454; Lockwood v. Whitlesey (1912) 23 Ohio Cir. Ct. (N. S.) 241; Oxsheer v. Nave (1897) 90 Tex. 568, 40 S. W. 7, 9, 37 L. R. A. 98. See 1 A. L. R. 1017 and 1021. Later annotations on the same question appear in 30 A. L. R. 780, which follows the opinion of the Iowa Supreme Court in the case of Woods v. Knotts, 196 Iowa, 544, 194 N. W. 953, 955, beginning on page 768 of 30 A. L. R.; and in 75 A. L. R. 882. The Iowa court in the Woods Case, supra, seriously criticized its former opinion in Russell v. Smith, 115 Iowa 261, 88 N. W. 361, and which was the one aligning the Iowa court with those denying the right of retainer as to inherited real estate, and which court was, consequently, listed with others also denying the application of the right.

The Woods opinion was based on this suggestion made in the prior Russell Case determined by the Iowa

court, "There may be cases where, on account of the insolvency of the debtor, or for some other cause, equity will interfere for the protection of the estate." The Woods opinion, after taking that excerpt from the prior Russell one from the same court, continued, "This was perhaps dictum, and yet it was announced for the purpose of saving an exception to the general rule, if any such exception exists. As a matter of fact, many courts, and doubtless a majority numerically, recognize and enforce the exception." The exception therein referred to was the one which the Iowa court suggested in the Russell opinion might call for the application of the doctrine of the right of retainer as against inherited real estate if the indebted heir was insolvent, which was true as to the involved heir in the Woods opinion, and the court determined the case on that basis. However, it took occasion to express its doubt as to the soundness of the reasoning of the courts in drawing a distinction between the application of the right of retainer or set-off in cases of inherited personalty, and rejecting it where only real estate was inherited, and it expressed that doubt in this language: "As pointed out in the Brackey Case (165 Iowa, 525, 146 N. W. 24, 1 A. L. R. 978) the courts are divided upon this question, but it must be confessed that the reasons assigned by those denying such right is not very persuasive." The only reason that any of the courts assign for denying the right as to inherited real estate is, that upon the death of an ancestor his personal property vests temporarily in his personal representative, who also becomes vested with title to the debts due his decedent, and that because of such unity of title in the personal representative he may deduct from a legacy (or distributable portion) any debt due from a beneficiary of the estate out of surplus personalty remaining after the payment of the debts of the decedent and costs of administration; whilst title to real estate vests in the heir eo instanter upon the death of an intestate owner.

As pointed out in the annotation supra in 1 A. L. R. this court, up to the date of that writing had aligned itself with those of other jurisdictions denying the right of set-off or retainer as against inherited real estate. Some of the cases in which it was done are: Scobee v. Bridges, 87 Ky. 427, 9 S. W. 299, 10 Ky. Law Rep. 390; Smith & Ross v. Brogee's Adm'rs, 46 Ky. Law Rep.

447; and Cockrill v. Linden, 43 S. W. 451, 19 Ky. Law Rep. 1379. There were perhaps others not listed in that annotation but in which the question was raised in some manner, and a similar ruling was made. The annotation supra in 30 A. L. R. follows also the case of Neel v. Campton, 201 Ky. 1, 225 S. W. 840, and appearing on page 765 of the A. L. R. volume referred to, and in which we followed the prior domestic cases recited above, but the later opinion (Neel Case) made no reference whatever to the case of Brown's Adm'r v. Mattingly, 91 Ky. 275, 15 S. W. 353, 12 Ky. Law Rep. 869. In that (Mattingly) opinion (to which, however, the heirs were not parties) Judge Bennett, in writing it for this court, after referring to the distinction supra as to the application of the doctrine to the two classes of inherited property, said: "But it is clear that the distributee's interest in the real estate should be extinguished to the extent that the amount he has received from the ancestor exceeds his interest in the personal estate. He stands in the attitude of having received so much from the estate, and, if his distributive share in the personal estate is not equal to the amount thus received, the real estate ought to be held to be charged with the payment of the remainder, in the division, and he to receive that much less. This is the only equitable rule; were it otherwise, the one heir might virtually get a double or a treble portion." Later domestic cases in referring to that statement denominate it as dictum, solely because the heirs were not parties litigant in that case. We are not altogether convinced that the reason assigned for characterizing the excerpt as dictum is entirely correct. But be that as it may, we said in our former opinion in this case that "none of them (our subsequent opinions dealing with the question) attempt to refute the sound reasoning of Judge Bennett that he employed in writing" that (Mattingly) opinion.

Returning now to a consideration of the question as viewed by the courts upholding the right of set-off or retainer as against inherited real estate, we find that the Texas Supreme Court in the Oxsheer Case, supra, said: "The right, in our opinion, rests not so much upon any rule of set-off or of retainer as upon the broad principles of equity." It furthermore said that, "The debt of one of the heirs to the estate is a part of

the general mass of property subject to distribution, and if such heir fail to pay it, if more than his share, so much of it as amounts to the value of his share should be set apart to him; if less than his share, it should be taken by him in satisfaction of that share, so far as it will go.'' Such reasoning is referred to with approval in a number of the cases upholding the right as to inherited real estate, and in which the courts criticize the distinction made by other courts holding to the contrary between inherited personalty and inherited real estate, as being fanciful and illogical, as well as inequitable and, therefore, unjustifiable.

The Ohio Supreme Court in the Keever Case, supra, not only adopts the reasoning of the Texas court in the Oxsheer Case, but it also takes this excerpt from the text of Prof. Woerner on American Law Administration of Estates, sec. 71, wherein that learned author says: ''The distinction between debts owing by an heir, and advancements made to him by the intestate, is sharply drawn. In some states debts so owing cannot be deducted from the share of the heir in the real estate, and from the personal estate only by way of set off; but the true principle seems to be that a debt owing by an heir constitutes part of the assets of the estate, as much as that of any other debtor, for which he should account before he can be allowed to receive anything out of the other assets, and it is so held in the United States.''

The North Dakota Supreme Court in the Stenson Case, supra, delivered a most logical and, we think, unanswerable opinion denying the more or less fallacious distinction between the two classes of property above referred to upon which the courts denying the right of retainer as to real estate base their conclusions. That opinion (Stenson) also cites the case of Dickinson's Estate, 148 Pa. 142, 23 A. 1053, as aligned with the cases upholding the right of retainer, or set-off, both as to inherited personalty and real estate. The court also in that opinion quotes from the second volume of the second edition of the work of Judge Woerner, supra, sec. 564, saying: ''The tendency seems to be in favor of the right of set-off'' and which upon examination of the text shows to apply to real estate as well as to personal property. The court also in the same opinion reviewed opinions from all of the courts

that deny the right, as applied to inherited real estate —upon the sole ground of the shadowy distinction referred to—devoting a large part thereof to the case from the Michigan Supreme Court of Marvin v. Bowlby, 142 Mich. 245, 105 N. W. 751, 4 L. R. A. (N. S.) 189, 113 Am. St. Rep. 574, 7 Ann. Cas. 559, which seems to be the leading American case recognizing and applying the distinction between the two classes of property. It likewise refers to and discusses prior opinions of other courts rejecting that distinction and in aligning itself with them it closes the discussion with this language: "These, and kindred cases too numerous to mention, announce a salutary, equitable, and just rule, and we adopt the same as the rule in this jurisdiction."

In the annotation in Ann. Cas. 1916D, in which the Stenson opinion is published on page 1289, the annotator says: "The recent cases uniformly hold that the share of an heir in an intestate's realty is chargeable with the debts due from the heir to the estate." A reference to that annotation will show the cases cited in support of that excerpt. The opinions so applying the right as to inherited real estate point out that their jurisdictions have similar statutes relating to the retention of technical advancements as is our statute, section 1407 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes. It was contended in that case— and also in many if not all of the others applying the doctrine—that the fact that the Legislature had singled out "advancements" as deductible from the heir's interest in his ancestor's estate, regardless of the character of property inherited, was a more or less convincing one that nothing but such technical advancements would create a superior right in the other beneficiaries to require payment thereof before any allotted portion of the indebted heir should be paid to him or be subjected to his debts. The North Dakota court disposed of that contention this wise: "The legislation thus enacted (relating to advancements) was no doubt for the purpose of distinguishing advancements from gifts, and not for the purpose of affecting, in the least, the rights of heirs or distributees who might be indebted to the estate. Indebtedness due the estate is a part of its assets for distribution after payment of the debts and expenses of administration; but neither gifts nor advancements can be thus considered. Legislation was

thus necessary in the one case, but not in the other." Moreover, the same argument would defeat the right of set-off as against inherited personal property which this and all other courts have approved without variation, notwithstanding some of them, as we have pointed out, dissent from the proposition, that the same principle should likewise apply to inherited real estate.

We could no doubt strengthen and fortify the conclusions reached in this opinion by a continued discussion of the question and incorporating a mere extensive reference to texts and opinions upholding the right of set-off or retainer as against both inherited personal property and real estate. However, we have said enough to direct the attention of the reader to sources which demonstrate that no such distinction should be drawn, and which conclusion is supported by irrefutable logic, and wherein the alleged distinction is dissipated as being shadowy and unsupported by either reason or justice. We, therefore, conclude that our domestic opinions above referred to, and all others of the same tenor, wherein we denied the superior right of the beneficiaries of the estate to deduct the amount of an heir's indebtedness from his portion of inherited real estate as well as personalty, are unsound and should no longer be followed, and they are now expressly overruled. Likewise, as an inevitable consequence, we conclude that the doctrine of retainer or set-off should apply equally to both inherited personal property and inherited real estate. It, therefore, follows that the opinion of the learned court dismissing appellant's right to a superior lien on the inherited interest of Allen T. Veatch in his father's real estate, and adjudging a superior right of the other beneficiaries to appropriate such interests to the extinguishment of the son's indebtedness to his father, was and is correct.

Wherefore, for the reasons stated, the judgment is affirmed; the whole court sitting.