Kenneth MAGRUDER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 11, 1955.

As Corrected on Denial of Rehearing
Sept. 23, 1955.

Tom B. Givhan, Shepherdsville, for appellant.

J. D. Buckman, Jr., Atty. Gen., Wm. F. Simpson, Asst. Atty. Gen., for appellee.

718

STEWART, Chief Justice.

O. K. MaGruder appeals from a judgment convicting him of knowingly receiving stolen property in violation of KRS 433.290 and fixing his punishment at two years' imprisonment. Three grounds are urged for reversal: (1) The court erred in failing to give an accomplice instruction; (2) the court erred in accepting jurors who were challenged for implied bias; and (3) the Commonwealth's attorney's argument to the jury was prejudicial.

The principal witness for the Commonwealth, Charlie Quick, testified that MaGruder, who erected and repaired telephone lines, was in need of some air hammers and that in September or October of 1953 he requested Quick to steal these tools for him. Quick agreed to undertake the assignment and thereafter enlisted the aid of Donald Trunnell and Jack Jones as the persons to carry out the unlawful design. The latter two men drove Quick's car under cover of darkness to the tool shed of the Bracken Construction Company on the Blue Lick Pike in Bullitt County, where this company was engaged at the time on highway work, forced open the door of the shed and abstracted therefrom three air hammers and some air hose. The stolen property was transported by Trunnell and Jones the same night to MaGruder's residence where MaGruder, on being called, came out of his house and instructed them to deposit it in a garage near by. Quick said he received $100 from MaGruder for the property, and this money he divided with Trunnell and Jones. On direct examination he was asked, "Did you tell him (MaGruder) where you were going to get the hammers?" and he answered, "He knew where they were coming from." Quick also stated MaGruder knew Trunnell and Jones were engaged all along with him in the thieving transaction.

A few days after the property had been stolen, Quick was picked up and interrogated about the missing tools by the sheriff and county attorney of Bullitt County. The next night he told MaGruder he had been questioned by the two officials concerning the air hammers and hose, whereupon MaGruder exclaimed: "Get rid of them; dump them in the river." According to Quick, about six hours later, while it was still dark, Quick, Trunnell and Jones went to MaGruder's residence, took the air hammers and hose from the garage, conveyed this equipment in Quick's car to the Salt River near Shepherdsville and dumped all of it in the river.

Quick later divulged sufficient information to a court of inquiry to cause MaGruder to fall under suspicion and afterwards to be charged with knowingly receiving stolen property. A search of MaGruder's premises failed to reveal the whereabouts of the equipment, but, after Quick had subsequently confessed his participation in the crime, it was located in the river at the spot where he said it had been thrown in. The evidence of Trunnell and Jones, both of whom were called as witnesses for the Commonwealth, confirmed Quick's testimony as to the part they performed in the theft of the property. The county judge of Bullitt County testified that when MaGruder was called before the court of inquiry and asked if he had bought any air hammers from Quick he denied having done so.

The Commonwealth introduced the foregoing evidence, then rested and MaGruder moved for a directed verdict upon the theory that a case had not been made out against him. His motion was overruled, to which he excepted, but, instead of electing to appeal from this ruling of the court, he took the stand and admitted he had purchased three air hammers from Quick but denied he had ever received any information that the tools were stolen property. He revealed that the property was placed in his garage by Quick, from which place it later disappeared, but that he did not know what had happened to it. He aslo testified he had previously denied the purchase of any air hammers from Quick.

Were the three men who actively engaged in the theft of the three air hammers and the air hose accomplices of MaGruder? If this question is answered in the affirmative, should an accomplice instruction have been given?

An accomplice is one who knowingly, voluntarily, and with common intent, unites with the principal in the perpetration of the crime, either by being present and joining in the criminal act, by aiding and abetting in its commission, or, if not present, by advising and encouraging the performance of the act. Miller v. Commonwealth, 240 Ky. 355, 42 S.W.2d 523; Cook v. Commonwealth, Ky., 273 S.W.2d 390.

Ordinarily one who steals goods is not an accomplice of the person who knowingly receives them. Solomon v. Commonwealth, 208 Ky. 184, 270 S.W. 780. Here, if we give credence to the evidence of Quick, MaGruder not only suggested the theft but also agreed he would receive and pay for the property. Quick's testimony also makes it clear MaGruder was fully informed that Trunnell and Jones were to assist him in stealing the air hammers. Thus we have a conspiracy in which all shared and, on this showing, there can be no doubt that Quick, Trunnell and Jones were accomplices of MaGruder. Grady v. Commonwealth, 237 Ky. 156, 35 S.W.2d 12.

Section 241 of the Criminal Code of Practice provides: "A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; * * *." In deciding the sufficiency of the corroboration of the evidence of an accomplice, we must eliminate his evidence and determine whether the remaining evidence tends to connect the accused with the crime. Commonwealth v. McGarvey, 158 Ky. 570, 165 S.W. 973. The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof. See Section 241, supra.

We have many times written, however, that it is not reversible error to fail to instruct in accordance with the foregoing Code provision where the accused's guilt was established by independent, ample, substantial evidence of a competent nature. See Sizemore v. Commonwealth, Ky., 262 S.W. 2d 817, and the cases cited therein on this point. We shall now examine the evidence in the light of this rule.

Knowledge that the air hammers were stolen is the controlling element in a crime such as the one under consideration. In addition, under KRS 433.290, possession of stolen goods is prima facie evidence of guilt. We have shown there was at first a denial by MaGruder that he had had any dealing with Quick and there was subsequently an admission by him that he bought three air hammers from him. Thus MaGruder's acknowledgment that he once had possession of the stolen property, coupled with the contradictory statements to which we have alluded, unquestionably tended to connect him with the commission of the offense, and such evidence, standing alone, was clearly sufficient to take the case to the jury and sustain a conviction on the question of knowingly receiving stolen property. To state the same proposition differently, the testimony of Quick, Trunnell and Jones could be dispensed with and there would still be ample, independent, competent evidence to uphold a conviction. Therefore we conclude that MaGruder's substantial rights were not prejudiced because the accomplice instruction was not given.

As to the next assignment of error, we are unable to say from the record that bias upon the part of any of the jurors was established, because there is no disclosure as to what transpired in this respect. Accordingly, we must assume that counsel for the defense on the voir dire was unable to obtain admissions or to show that any member of the panel was biased, so as to satisfy the court in the exercise of its sound discretion that such juror could not try the case impartially and without prejudice to the substantial rights of the accused. See Section 209 of the Criminal Code of Practice.

The final complaint is that the Commonwealth's attorney included in his

argument to the jury a detailed account of the eligibility of MaGruder for parole if the jury brought in specified convictions under the offense charged. This Court has for many years condemned statements of this character and in the recent case of Broyles v. Commonwealth, Ky., 267 S.W.2d 73, the injection of such a dissertation into a closing speech to the jury was held to constitute a reversible error. In the case at bar, however, Ma-Gruder failed to object to the remarks and as a consequence he waived this misconduct upon the part of the prosecutor. It is an elementary rule of criminal procedure that errors not brought to the attention of the trial judge and not preserved by exceptions to his rulings are not available on an appeal to this Court. See Warren v. Commonwealth, Ky., 256 S.W.2d 368.

Wherefore, the judgment is affirmed.