929 F.2d 272
 32 Fed. R. Evid. Serv. 860
 Homer Lee SHERLEY, Jr., Petitioner-Appellee,
v.
William SEABOLD, Warden of the Kentucky State Penitentiary;
Frederic J. Cowan, Attorney General of the
Commonwealth of Kentucky, Respondents-Appellants.
 No. 90-6036.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 14, 1991.
Decided April 4, 1991.
Order Denying Petition to
Rehear May 24, 1991.
 
 Homer Lee Sherley, Jr., pro se.
 Fred R. Radolovich (argued), [NTC cja] Louisville, Ky., for petitioner-appellee.
 Frederic J. Cowan, Atty. Gen., Perry T. Ryan, Asst. Atty. Gen. (argued), Frankfort, Ky., for respondents-appellants.
 Before MERRITT, Chief Judge, KENNEDY and JONES, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 The Commonwealth of Kentucky has appealed the District Court's order granting a writ of habeas corpus to the petitioner-appellee, Mr. Homer Sherley. The petitioner is in the custody of the respondent-appellant, Mr. William Seabold, Warden of the Kentucky State Penitentiary, serving a 134 year sentence for convictions of robbery, burglary, attempt to commit burglary and persistent offender statutes. The District Court determined that Sherley's Sixth Amendment confrontation clause rights had been violated, and we affirm the District Court's judgment. The U.S. Supreme Court articulated a two part test in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), to be satisfied before hearsay testimony can be admitted constitutionally, and Kentucky's efforts have not satisfied either of the required parts. Kentucky has not demonstrated the "unavailability" of its witness, and the hearsay testimony does not satisfy the "indicia of reliability" required in order to be admitted as evidence. Although Kentucky has offered physical and other testimonial evidence in addition, it has not met the "beyond-a-reasonable-doubt" standard required by Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), before a constitutional error can be considered "harmless."
 
 
 2
 Sherley was arrested during a burglary attempt at the home of an eighty-nine year old woman in May, 1986, and subsequent to this arrest was indicted for the earlier April 26 robbery and burglary of eighty-two year old Mrs. Pauline Lang. Lang had been robbed and beaten, and required hospitalization and later placement in a nursing home for custodial care. Lang made statements with regard to her attack to a number of persons--her neighbor, the police officers who responded to the call for assistance, an emergency room nurse, and the investigating detective--which the prosecution offered in the form of hearsay evidence. Lang suffered from some memory loss before her hospitalization, and the attack worsened her condition. Joint Appendix ("J.A.") at 62, 67-73, 79-83, 117-19. Thus, her relatives decided that she should not testify. J.A. at 109-10. In addition, the physician who treated Lang initially during her hospitalization testified that she had been injured severely and had suffered "impairment." J.A. at 73-75.
 
 
 3
 The trial court admitted the hearsay testimony offered by the prosecution, and Sherley was convicted by a jury on October 5, 1986. The Kentucky Supreme Court affirmed Sherley's conviction on October 15, 1987, in an unpublished decision. Having exhausted his state remedies, Sherley filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254 on October 10, 1989. Although the Magistrate's Report recommended dismissal of Sherley's petition, the District Court rejected the recommendation and denied Kentucky's motion for summary judgment on July 12, 1990, because it found that Sherley's confrontation clause rights had been violated. This appeal follows.
 
 
 4
 The Sixth Amendment provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." The U.S. Supreme Court has devised a two part test to safeguard this fundamental right. The prosecution must demonstrate the "unavailability" of a witness before the admission of hearsay testimony can be considered, and then the testimony must bear some "indicia of reliability" in order to be admitted. Roberts, 448 U.S. at 65, 100 S.Ct. at 2538.
 
 
 5
 The Sixth Circuit has further developed the test required by Roberts. Although the "unavailability" requirement is inexact, the Sixth Circuit has required a greater effort than has been made by Kentucky. For example, in United States v. Quinn, 901 F.2d 522 (6th Cir.1990), the Sixth Circuit reversed a district court judgment on confrontation clause grounds because the prosecution had waited until less than five days before trial to subpoena its "unavailable" witness, and then made only desultory efforts to locate her. The court noted that Roberts requires a "good-faith effort" to obtain the presence of a witness before she can be considered "unavailable." Quinn, 901 F.2d at 527.
 
 
 6
 The Sixth Circuit's decision in another Kentucky habeas case, Stevens v. Bordenkircher, 746 F.2d 342 (6th Cir.1984), resembles this case more closely. In Stevens, the prosecution informally released the doctor who signed an important death certificate from testifying, and the court noted:
 
 
 7
 In this case, Dr. Begley was subpoenaed by the Commonwealth but the prosecuting attorney released him informally from testifying. This informal and highly improper release of an important witness did not make Dr. Begley unavailable for purposes of the Confrontation Clause.
 
 
 8
 Stevens, 746 F.2d at 348.
 
 
 9
 In Sherley's case, the prosecution neither issued a subpoena to Lang nor attempted to depose her, a procedure allowed by Kentucky law.[1] Hardy v. Wigginton, 917 F.2d 24 (6th Cir.1990) (upholding videotaped depositions against confrontation clause challenge). Instead, the prosecution simply deferred to the wishes expressed by Lang's family and her treating physician. Since Roberts and the relevant Sixth Circuit case law requires a demonstration rather than an assumption of "unavailability," the District Court was correct in its legal analysis.
 
 
 10
 An ordinary application of Roberts would find a confrontation clause violation if the prosecution has not made a good-faith effort to demonstrate the "unavailability" of the witness, but Kentucky informed the panel at oral argument that Lang died in 1989. Thus, the "available" witness has become "unavailable," and the "harmful" constitutional error may have become "harmless" if the hearsay evidence offered demonstrates adequate "indicia of reliability." In effect, Kentucky argues that Lang's death cured the constitutional error because she has become "unavailable" in terms of the hearsay exception allowed by the Federal Rules of Evidence and analogous to Kentucky's common law rules of evidence.[2] Crawley v. Commonwealth, 568 S.W.2d 927, 931 (1978), cert. denied, 439 U.S. 1119, 99 S.Ct. 1028, 59 L.Ed.2d 79 (1979) (Kentucky adopts "unavailability" definition of Fed.R.Evid. 804).
 
 
 11
 No cases or secondary authorities have considered the effect of a subsequent death on a constitutional error involving an unavailable witness, but we do not need to solve this conundrum.[3] Lang's statements, with the possible exception of those she made to her neighbor before being removed from her home,[4] do not meet the constitutional standard required to demonstrate "reliability." Roberts requires "indicia of reliability" to be proved either by reference to a firmly rooted hearsay exception or by a showing of "particularized guarantees of trustworthiness." Roberts, 448 U.S. at 66, 100 S.Ct. at 2539. The U.S. Supreme Court noted recently that
 
 
 12
 "particularized guarantees of trustworthiness" ... include only those [circumstances] that surround the making of the statement and that render the declarant worthy of belief....
 
 
 13
 In other words, if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial.
 
 
 14
 Idaho v. Wright, --- U.S. ----, 110 S.Ct. 3139, 3148-9, 111 L.Ed.2d 638 (1990).[5]
 
 
 15
 Lang's statements do not offer the "particularized guarantees of trustworthiness" required by Wright and Roberts. Lang suffered from memory loss before her attack, and her condition worsened after. Each witness offered by the prosecution admitted that Lang was not always coherent and thus not always reliable. Her neighbor, Mrs. Mildred Feezor, admitted that she was coherent sometimes and incoherent at other times even before her attack. J.A. at 62. The emergency room nurse, Mrs. Green, stated that although Lang alleged somebody stole her money, Lang did not remember what happened. J.A. at 73. The two police officers summoned to Lang's house heard different accounts about the robbery, and Officer Ormes was unsure whether Lang accused "a black man" or Mrs. Feezor's husband as the assailant. J.A. at 87. Officer Bruce maintained that Lang stated specifically that her assailant was "a black man who worked at the [Baptist] hospital." J.A. at 88. Officer Bruce also testified that Lang had $80 stolen, not $20, as Officer Ormes testified. J.A. at 86, 90. Detective Josyln testified that "[a] lot of the things that she told me were obviously nonsense." J.A. at 93. Lang's son-in-law, Mr. David Record, testified that "she's better at some times than others." J.A. at 114. He also testified that "I'm sure it's well known that she told some stories that were fantasizing perhaps. I have no problem picking out the real from the fantasy, [but] someone else might." J.A. at 118. In sum, Kentucky has not demonstrated why Lang's statements should be considered "reliable," particularly given the strictures imposed by Wright with regard to inherent "particularized guarantees of trustworthiness." Both Wright and Roberts require more than part-time "reliability."
 
 
 16
 Indeed, this case resembles another Kentucky case, Wager v. Commonwealth, 751 S.W.2d 28 (1988), closely. Wager had been convicted for rape, assault and burglary in connection with an attack on an eighty-seven year old woman. The woman died before the commencement of trial, and thus the prosecution relied primarily on physical evidence, a jailhouse confession, and hearsay testimony given by the victim to the investigating detective 1 1/2 days after the attack.
 
 
 17
 The Kentucky Supreme Court reversed the convictions on a number of grounds, but noted specifically:
 
 
 18
 The victim in the case at bar was eighty-seven years old and had been severely traumatized. Her identification of appellant was somewhat confused, and Detective Veluzat testified that he "knew who she was talking about." It was therefore error for the trial court to admit the testimony of Detective Veluzat regarding the victim's identification of her assailant.
 
 
 19
 Wager, 751 S.W.2d at 29.
 
 
 20
 Kentucky has excluded hearsay testimony offered in other cases where the victim has died and the remaining "indicia of reliability" are weak, so our analysis in this case is not unusual even within Kentucky case law. Maynard v. Commonwealth, 558 S.W.2d 628 (1977).
 
 
 21
 Last, Kentucky argues that "overwhelming" evidence renders any trial error against Sherley "harmless" under the standard articulated in Chapman. Chapman requires that a constitutional error be "harmless beyond a reasonable doubt," and we cannot agree that the violation of Sherley's confrontation clause rights was "harmless." Chapman, 386 U.S. 18, at 24, 87 S.Ct. 824, at 828. Although Kentucky has offered circumstantial evidence in the form of hair and fiber samples, a button found at Lang's house that has the same chemical composition as the buttons found on Sherley's jacket as well as the testimony of two jailhouse informants, the sole witness to the attack was Lang herself. The prosecution substituted the hearsay testimony of respectable individuals within the local community--wife of the local hospital administrator, three policemen, an emergency room physician, and a dutiful son-in-law--in place of the sometimes inconsistent and confused recollections of an eighty-two year old woman. We cannot say beyond a reasonable doubt that her uncross-examined hearsay had no effect on the outcome of Sherley's trial or the 134 year sentence imposed. Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 In addition to Kentucky Rule of Criminal Procedure 7.02, which provides for the routine issuance of subpoenas to witnesses, Kentucky Rules of Criminal Procedure 7.10 and 7.12 allow the use of videotaped depositions in circumstances where the witness is unable to attend the trial physically. Hardy v. Commonwealth of Kentucky, 719 S.W.2d 727 (1986)
 
 
 [2]
 Federal Rule of Evidence 804(a)(4) provides:
 (a) Definition of unavailability. "Unavailability as a witness" includes situations in which the declarant-- ...
 (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity....
 
 
 [3]
 For example, the declarant in Fuson v. Jago, 773 F.2d 55 (6th Cir.1985), cert. denied, 478 U.S. 1020, 106 S.Ct. 3334, 92 L.Ed.2d 739 (1986), committed suicide before trial, and not in the intervening period between petitioner Fuson's conviction and retrial following the granting of a habeas writ
 
 
 [4]
 These statements may meet the excited utterance exception to the hearsay rule. Whether Lang was sufficiently coherent to meet the other requirements for admission of hearsay is a factual question to be determined based on evidence presented to the state trial court on retrial
 
 
 [5]
 The majority holding in Wright provoked a vigorous dissent that argued in favor of the use of corroborating evidence to validate the hearsay testimony of a non-testifying witness. Wright, 110 S.Ct. at 3153-57. The corroborating evidence included more persuasive physical and testimonial evidence than has been presented here, and application of the Wright dissent would produce the same result in Sherley's case, although it would be a closer call. Lang suffered from memory loss before her attack, and her condition worsened after. Allowing consideration of corroborating evidence will not simultaneously transform her statements into reliable hearsay testimony and safeguard Sherley's right to confront his witness