Homer Lee **SHERLEY**, Appellant,

v.

**COMMONWEALTH of Kentucky,** Appellee.

No. 93–SC–348–MR.

Supreme Court of Kentucky.

Dec. 22, 1994.

---

Margaret Foley Case, Bobby C. Simpson, Asst. Public Advocates, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Perry T. Ryan, Asst. Atty. Gen., Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Sherley of first-degree burglary, first-degree robbery and attempted second-degree burglary. He was found to be a persistent felony offender and sentenced to a total of 80 years in prison.

Sherley raises five claims of error which will be treated in sequence. The principal issue involves the standard of review to be applied under the circumstances of this case. The role of this Court is to review the direct appeal of the second trial. Previous trials

and federal habeas corpus determinations regarding this defendant are not factors in our current analysis in regard to the direct appeal of the second trial.

Sherley was first charged in 1986 with first-degree robbery and first-degree burglary of the residence of an 81–year–old Paducah woman, attempted first-degree burglary of the dwelling of another 89–year–old Paducah woman, and with being a second-degree persistent felony offender. He was originally tried in October of 1986. He appealed to this Court and his conviction was affirmed in an unpublished opinion on October 15, 1987. Sherley then petitioned for a writ of habeas corpus. Although the magistrate's report recommended dismissal of Sherley's petition, the district court rejected the recommendation and found that Sherley's confrontation clause rights had been violated. In *Sherley v. Seabold*, 929 F.2d 272 (6th Cir.1991), the Sixth Circuit Court of Appeals directed that a retrial be instituted because of the hearsay statements of one of the two victims. The first victim died sometime after the filing of the habeas petition. The second victim also died in the interim between the first trial and the second trial. Sherley, who had testified at his first trial, decided not to testify at retrial. This appeal is from a retrial of a case that was reversed on the petition for habeas corpus.

I

■ A) Sherley argues that the introduction of alleged hearsay evidence at the retrial prejudiced him and deprived him of his right of confrontation and due process. We disagree. During the first trial, the statements of one of the victims were admitted into evidence although the victim did not testify. These statements formed the basis for reversal by the Federal court. The Federal court applied the then valid test for review of a federal habeas question announced in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This standard has since been replaced and overruled in part by *Brecht v. Abrahamson*, 507 U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), which requires that the error have substantial and injurious effect or influence in determining the jury's verdict.

During the second trial, some of the same evidence was offered by the prosecution. The evidence was admitted without objection. Error on appeal cannot be considered in the absence of a proper objection to preserve that error for appellate review. *Todd v. Commonwealth*, Ky., 716 S.W.2d 242 (1986). Here there was sufficient evidence even without the statements to allow the jury to reach a verdict of guilty. Even if subject to review, the complained of alleged hearsay evidence was merely cumulative, and there is no substantial possibility that the result would have been any different. *Cf. Commonwealth v. McIntosh*, Ky., 646 S.W.2d 43 (1983).

The U.S. Supreme Court held that the proper standard in a federal habeas corpus case is that of *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), and not that of *Chapman, supra.* Consequently, *Sherley, supra*, has been overruled in part. Sherley admits that this issue was not properly preserved for appellate review indicating that no contemporaneous objection was made to the introduction of the evidence set forth here. The argument now presented is founded on circumstances that were not properly preserved for appellate review as required by RCr 9.22.

We find no reason to review this issue as one of palpable error pursuant to CR 60.02. The Federal courts have repeatedly refused to review alleged error where state courts have initially refused to consider the issue due to procedural default such as in this case. *Ewing v. McMackin*, 799 F.2d 1143 (6th Cir.1986). The defendant failed to make contemporaneous objection as required under a state procedural rule in the absence of a demonstration of both cause and prejudice. This is not an extraordinary case in which a constitutional violation has probably resulted in the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Here, Sherley waived any complaint about the exhibits. He filed a pretrial motion for discovery with which the Commonwealth complied, and there is no claim that there was any failure to show defendant or counsel

the exhibits during open file discovery. Any possible error was unpreserved and not prejudicial. RCr 9.22. Sherley's defense at trial was that he was not the person who robbed the first victim. His guilt was established by the following: 1) he admitted guilt to two inmates at the jail who informed police; 2) his method of operation during the burglary of the second residence was similar to that of the first dwelling; 3) the coat button left on the floor matched the buttons on Sherley's coat; 4) the hair samples found on the floor revealed that the intruder was a man with hair similar to that of Sherley; 5) the fiber samples found on the first victim's clothing matched the fibers on Sherley's coat; 6) witnesses testified that the first victim routinely kept money in her purse and that after the assault she had no money in her purse, and 7) witnesses testified that they saw the first victim shortly after the robbery and that her face and head had been beaten.

B) In the reply brief, Sherley, with new counsel, raises the argument that the decision of the Sixth Circuit is the law of the case and relies on *Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), as support.

 The State Supreme Court is the final arbiter of the application of the doctrine of law of the case. *King v. West Virginia,* 216 U.S. 92, 30 S.Ct. 225, 54 L.Ed. 396 (1910). The doctrine of law of the case is based on policy and is not inflexible. *See* 5 Am.Jur.2d *Appeal and Error* § 751 (1964). Courts are not absolutely bound by the doctrine and may exercise discretion in its application. *United States v. U.S. Smelting, Refining & Mining Co.,* 339 U.S. 186, 70 S.Ct. 537, 94 L.Ed. 750 (1950). The Federal Constitution contains nothing that requires adherence to the law of the case.

Reliance on a law of the case argument is misplaced. The doctrine is reserved for situations where the decision of a superior court within the same judicial organization is binding on a subsequent trial court of that judicial organization or upon itself. *See Loverett v. Veatch,* 268 Ky. 797, 105 S.W.2d 1052 (1937). In *Bailey v. Robinson,* 244 Ill. 16, 91 N.E. 98 (1910), an appellate court determined that a witness at the first trial was incompetent to testify. The superior state appellate court was free to make an independent determination as to the competency of the witness. Research fails to disclose a single situation where an intermediate federal appellate court determination is the law of the case for a subsequent state retrial or appeal to the state's supreme court.

At the second trial, the same evidence which caused the reversal based on the *Chapman* test, was admitted by the trial judge pursuant to the *Brecht* standard. Sherley now argues that the law of the case requires this Court to again reverse and remand for a trial consistent with the *Chapman* test. Sherley claims that the United States Supreme Court "held that a final ruling from the highest court before which a case is submitted will become the law of the case."

In *Strunk, supra,* certiorari was granted on his "claim that once a judicial determination has been made that an accused has been denied a speedy trial, the only remedy available to the court is to 'reverse the conviction'." *Strunk.* The Court of Appeals reversed the trial court which denied Strunk's motion to dismiss. The prosecution did not file a cross-petition to review the determination of the Court of Appeals.

The U.S. Supreme Court did not hold as argued by Sherley. It chose to "not resolve" whether it "might deal with an issue involving constitutional claims, absent its being raised by cross-petition." "We are not disposed to examine the issue since we must assume the Government deliberately elected to allow the case to be resolved on the issue raised by the petition." *Strunk.*

Closer on point is Sherley's reliance on *Commonwealth v. Schaefer,* 639 S.W.2d 776 (1982). The *Schaefer* trial court refused to admit a tape recording made by police officers. Schaefer was nevertheless convicted. The conviction was reversed and remanded. At the second trial, the tape was again refused admission into evidence. The Commonwealth appealed and this Court determined that the law of the case acted as a bar to the matter. It determined that because the Commonwealth did not appeal or cross-

appeal the issue during the first series of appeals, it "allowed all of the issues presented on the first appeal to become 'res judicata' under the doctrine of the 'law of the case.'"

Again Sherley's analysis is flawed. The distinguishing factor between the law of the case opinions and the current situation is that where the law of the case applies, it is limited to situations where a ruling of law is made based on existing law and that ruling has gone unchallenged during the original appeal. *See Inman v. Inman,* Ky., 648 S.W.2d 847 (1982); *Siler v. Williford,* Ky., 375 S.W.2d 262 (1964); *Martin v. Frasure,* Ky., 352 S.W.2d 817 (1962).

In the current situation, the law changed between the first and second trials. It was only when *Brecht* changed the law that the issue became ripe. Application of the law of the case doctrine would require every defendant and every prosecutor to immediately challenge every aspect of the law involved in the case or forever be denied relief.

■ The law of the case doctrine does not apply in this limited situation where the controlling law changes after reversal of a conviction but prior to a subsequent re-trial. Such a rule would require every party to appeal or cross-appeal every single issue in every case. The burden on the justice system would be intolerable.

The trial court did, however, err in its application of the *Brecht* standard. The only concern on direct appeal is whether any errors which occurred were harmless beyond a reasonable doubt. The *Brecht* standard is of limited application to federal review of claims of habeas relief. The core question Sherley brings to this court involves the admission of the testimony of one of the victims during the retrial. It was this testimony which caused the reversal by the federal court. The trial court allowed some of this testimony to be admitted during the second trial based on an erroneous understanding of the Brecht analysis.

■ That mistake is not however sufficient to require reversal and retrial. There was no contemporaneous objection to the admission of the statements. Sherley did not provide the trial court with an opportunity to correct any error. RCr 9.22. Even palpable error can be waived. *Turpin v. Commonwealth,* Ky., 780 S.W.2d 619 (1989). Sherley was provided with the exhibits prior to trial and did not object to their admission. He cannot now claim reversible error. There is nothing to indicate that the statements affected the outcome of the case and any error was indeed harmless. *Cf. Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

## II

■ Testimony given by the defendant during his previous trial was properly admitted in the second trial. He was not prejudiced or denied a fair trial.

At the first trial, Sherley testified in his own defense, however, during the second trial, he did not testify. During the second trial, the prosecutor advised the court that he wanted to read to the jury parts of Sherley's testimony in the previous trial. Sherley objected on the grounds that he was not required to testify pursuant to the Fifth Amendment, that he would not testify at the trial and that to read his previous testimony would violate his rights. The trial judge permitted the testimony to be read.

Once the defendant decides to speak to police officers or testify in open court, he waives his Fifth Amendment privilege. There was nothing improper about introducing the prior testimony at the second trial. Sherley waived his right to silence when he testified at the first trial in his own defense. There is nothing which requires the extension of immunity to any trial other than the one where the right is preserved by a refusal to testify. *McKee v. Commonwealth,* Ky. App., 720 S.W.2d 344 (1986). *See also Raffel v. United Stats,* 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926); *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984); *Brown v. United States,* 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958).

## III

The claims that there was prosecutorial misconduct in the opening and closing statements and that the introduction of post at-

tack photographs of the first victim were inflammatory are without merit. The issue is properly preserved only as to the use of the photographs.

■ During opening statement, the prosecution showed the jury an enlarged color photograph of the first victim, the 81–year-old prosecuting witness as she lay in a hospital bed recovering from her injuries. The trial judge was not given an opportunity to rule on the comments made by the prosecution during either opening or closing argument. When a trial court has not had the opportunity to rule, the appellate court is unable to review the alleged error. *Todd, supra; Magruder v. Commonwealth,* Ky., 281 S.W.2d 716 (1955).

Even if objection had been raised, the statements made by the prosecutor do not rise to the level of reversible error. *Cf. Slaughter v. Commonwealth,* Ky., 744 S.W.2d 407 (1987). None of the complaints amount to "egregious error" as condemned in *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). A review of the record does not indicate anything in the argument by the prosecutor which violated the latitude permitted during opening or closing argument and the arguments did not cause the trial to be fundamentally unfair to the defendant. *Lynem v. Commonwealth,* Ky., 565 S.W.2d 141 (1978).

■ Presenting the photographs of the victim to the jury during the opening statement was not reversible error. Such photographs of the injuries of a victim are admissible to show how those injuries were sustained. *Salisbury v. Commonwealth,* Ky., 417 S.W.2d 244 (1967).

■ A review of the record does not indicate that the prosecutor misrepresented the facts to the jury. Sherley lists individual statements attributed to the prosecutor, any one of which he claims requires reversal. We do not agree. The jury was informed that opening statements are not evidence. Any summary or general remarks by the prosecutor were clarified by the witnesses during the actual testimony at trial. The opening or closing remarks were of little effect upon the determination of guilt or sentence by the jury. The prosecutor may argue reasonable inferences from the evidence without causing reversible error. *Bills v. Commonwealth,* Ky., 851 S.W.2d 466 (1993). Contrary to the argument by Sherley, referring to the attack as "almost obscene" and describing the photographs as showing "what she went through" did not constitute a "Golden Rule" violation. *Lycans v. Commonwealth,* Ky., 562 S.W.2d 303 (1978). Statements made by the prosecutor did not amount to reversible error.

## IV

■ The trial judge properly permitted the introduction of evidence that the first victim died over three years after she was allegedly attacked and robbed. Sherley claims that he was denied a fair trial by the introduction of that evidence contrasted with victim impact evidence of what her life was like prior to the attack. He claims neither was relevant to the issue of guilt. We disagree.

During the opening statement, the prosecutor told the jury that the first victim, although 81 years of age, had been very active, but after the attack and robbery, she required permanent care in a nursing home. Defense counsel objected but was overruled. During the trial, the prosecutor asked the neighbors of the first victim to describe what sort of activities she had enjoyed prior to the attack. A review of the testimony indicates that although elderly, the first victim was active and independent until the day of the attack. Following that, she was confined to a nursing home until her death three years later. Evidence regarding the victim may be presented to the jury as background information so that the jury can appreciate the full impact of the crime. *Campbell v. Commonwealth,* Ky., 788 S.W.2d 260 (1990).

The contention by Sherley that the evidence that the first victim died was tantamount to accusing him of murder is without merit. It was proper to admit such evidence simply because the jurors would then have no doubt about her whereabouts and why she was unable to testify at trial. There is no evidence to support the claim that the prosecutor was attempting to inflame the jury.

## V

It was not reversible error for the trial judge to refuse to sever the robbery and burglary counts from the attempted burglary charge.

This Court has held that the trial judge has broad discretion with respect to joinder of charges and will not be overturned in the absence of a showing of prejudice and a clear abuse of discretion. *Rearick v. Commonwealth*, Ky., 858 S.W.2d 185 (1993). Offenses closely related in character, circumstances and time need not be severed. *Cardine v. Commonwealth*, Ky., 623 S.W.2d 895 (1981). *See also, Schambon v. Commonwealth*, Ky., 821 S.W.2d 804 (1991); *Russell v. Commonwealth*, Ky., 482 S.W.2d 584 (1972) and *Seay v. Commonwealth*, Ky., 609 S.W.2d 128 (1980).

Here the offenses were related in character, circumstance and time as required by *Cardine, supra.* The two offenses occurred within a month of each other and were similar in nature. They involved a breaking or attempted breaking into the home of an elderly female with the intent to commit a robbery inside. They involved a similar method of operation.

There is no showing of any abuse of discretion by the trial judge. Sherley has not demonstrated that the joinder would be so prejudicial as to be unfair or unnecessarily or unreasonably hurtful as is required by *Romans v. Commonwealth*, Ky., 547 S.W.2d 128 (1977).

The judgment of conviction is affirmed.

LAMBERT, REYNOLDS and SPAIN, JJ., concur.

LEIBSON, J., files a separate opinion concurring in result only.

STUMBO, J., dissents by separate opinion, in which STEPHENS, C.J., joins.

LEIBSON, Justice, concurring.

Respectfully, I concur in results only.

The Majority Opinion is a basketful of broken rules. These include:

1) That the U.S. Sixth Circuit's decision *reversing* the judgment in this case, *Sherley v. Seabold*, 929 F.2d 272 (6th Cir.1991) somehow has been overruled by *Brecht v. Abrahamson* 507 U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) simply because *Brecht* changed the standard for federal court review in habeas corpus cases to a less onerous one. *Brecht* has zero effect on the viability of the decision and opinion in *Sherley v. Seabold.* It should not be a subject of discussion in this opinion. The Federal District Court and the U.S. Sixth Circuit Court of Appeals, exercising habeas corpus jurisdiction, reviewed the first trial of this case and held that hearsay evidence was erroneously admitted in violation of the Sixth Amendment confrontation clause. Surely this is the law of the case upon remand and retrial of the same case. If and when the present decision is attacked in federal court, assuming the attack does not founder on the rocks of procedural default, we can be certain the federal courts will remind us that what they said previously about a federal question is the law of the case. Worse yet, the Majority Opinion suggests that we should not apply the law of the case doctrine to habeas review in the Federal District Courts and U.S. Courts of Appeal, even though it would apply if the U.S. Supreme Court were to undertake further review.

2) That, in admitting evidence held inadmissible in *Sherley v. Seabold*, the trial court was engaged in applying *Brecht* (albeit erroneously), i.e., a harmless error standard. Harmless error (an appellate problem) has nothing to do with trial court decision-making, and obviously was not a factor involved in this case at the trial level.

3) That because no section of the Federal Constitution guarantees to the accused the protection of the law of the case doctrine, our Court can turn it on or off at will, like a water faucet, without regard to due process considerations.

4) That an error in admitting hearsay evidence is not preserved by a pretrial motion in limine. Here, as described in the Commonwealth's brief (p. 12) there was a motion in limine "to prevent the prosecutor from introducing statements made by victim Pau-

line Lang," to which "the prosecutor stated (responded) that the prosecutor would not do so." While I agree that the pretrial motion did not preserve the complaint of error because of special circumstances present here (discussed *infra* ), as a general proposition, the pretrial motion in limine, once ruled upon, does indeed suffice. See KRE 103(d).

5) That, RCr 10.26 notwithstanding, "[e]ven palpable error can be waived." Majority Opinion, p. 798.

Because these broken legal premises now become precedent to cite in future cases, publishing this opinion is a serious mistake.

The prosecutor introduced evidence at the second trial of this case in flagrant disregard of the plain-spoken mandate in *Sherley v. Seabold.* The opinion states:

"Lang made statements with regard to her attacks to a number of persons—her neighbor, the police officers who responded to the call for assistance, an emergency room nurse, and the investigating detective—which the prosecution offered in the form of hearsay evidence." 929 F.2d at 273.

It then holds these statements, "with the possible exception of those she made to her neighbor before being removed from her home," [1] inadmissible hearsay and a violation of the confrontation clause in the Sixth Amendment:

"Lang's statements do not offer the particularized guarantee of trustworthiness required by *Wright* (*Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)) and *Roberts* (*Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980))." 929 F.2d at 274.

The law of the case set out by the Sixth Circuit in its opinion in *Sherley v. Seabold* was violated upon retrial in two respects.

1) Police evidence tags attached to exhibits and admitted into evidence for the jury to read and consider plainly introduced Lang's hearsay statements. The tags stated:

Ms. Lang, 81 year old w/f, widowed, states a b/m came to her door early, approx. 5:10 am just after she had gotten up and dressed. He had what appeared to be roses with him, and wanted her to open the door and give him a pencil to sign 'the paper.' She opened the door to hand him a pencil and he forced his way in and beat her face and head, and struck her left side breaking 4 ribs. Subject took money from victims purse and fled.

2) Lang's statements to the investigating police, plainly proscribed as hearsay by *Sherley v. Seabold,* were elicited by indirect means, but in such a manner that the jury could have no doubt as to what Lang said to the police. Officer Michael Ormes testified:

Q. Did Sergeant Bruce ask her what happened? And I just want to know if he asked her. I don't want you to tell me anything that she said. Okay? Did he ask Pauline Lang what happened?

A. Yes, he did.

Q. Did she respond and give an explanation?

A. Yes.

Q. Did Officer Bruce ask her if she had been robbed?

A. Yes.

Q. Again, I don't want you to tell me what she said, but did she give him an answer?

A. Yes, she did.

Q. After she gave an answer, did Officer Bruce locate anything?

A. Yes, he did.

Q. What did he locate?

A. Her purse.

Q. After he located her purse, can you tell us what he did with it?

A. He handed it to Mrs. Lang.

Q. And without telling us what she said, can you tell us what she did with the purse?

A. She opened it up so she could look inside of it and also held it up to where we could see inside of it also.

Q. Was there any money in the billfold?

A. No.

And Sergeant Bruce testified:

Q. Now again, I don't want you to—

---

1. "These statements may meet the excited utterance exception to the hearsay rule." *Id.*

A. Okay.

Q. —tell me what she said, but did she tell you what had happened?

A. Yes.

Q. Okay, based upon what she told you, without telling us what it was, did you locate any items in the room?

A. I located her purse laying on the floor near the head of the bed.

Q. After you found the purse, what did you do with it?

His testimony continued in the same vein. Mrs. Lang took the purse, opened it, and it was empty.

The testimony of these witnesses was clearly what *McCormick on Evidence* designates as an "indirect version of hearsay statement:"

> If the apparent purpose of offered testimony is to use an out-of-court statement to evidence the truth of facts stated therein, the hearsay objection cannot be obviated by eliciting the purport of the statements in indirect form. Thus evidence as to the purport of 'information received' by the witness, or a statement as the result of investigation made by other persons, offered as evidence of the facts asserted out of court, have been held to be hearsay. *McCormick on Evidence*, Sec. 249, p. 593 (Cleary ed. 1972).

Notwithstanding the trial error here in admitting evidence in clear violation of the hearsay rule and the confrontation clause as applied by the Sixth Circuit in its mandate in *Sherley v. Seabold,* amazingly enough, we are confronted with a serious preservation of error problem because in every instance the defense counsel failed to object at the point where the evidence was presented. While the overreaching prosecutor shovelled in the very same evidence which the Sixth Circuit had forbidden and the prosecutor had agreed not to offer, defense counsel stood by, seemingly oblivious to the fact the prosecutor was violating the mandate of the Sixth Circuit and the motion in limine, not raising his voice to alert the trial court to the problem. If this was a defense strategy, I am at a loss to understand it.

Thus, the one point made in the Majority Opinion with which I agree is that since no contemporaneous objection was made, if we are to reverse this case it must be on grounds of palpable error under RCr 10.26. Contrary to the Majority Opinion, if there is palpable error, a circumscribed legal concept articulated in RCr 10.26, we are duty bound to reverse. But the palpable error concept requires more than just an error the appellate court can palpate and more than what is reversible error if preserved by contemporaneous objection. It requires an unpreserved error "[so] substantial ... that manifest injustice has resulted from the error." RCr 10.26.

The key issue here is whether "manifest injustice has resulted from the error." The constitutional error standard, a "harmless beyond a reasonable doubt" review, applies if the error were preserved, but it does not control our hand when the problem is to decide whether the error is of such magnitude "manifest injustice has resulted." See *Jackson v. Commonwealth,* Ky.App., 717 S.W.2d 511 (1986). While the meaning of "manifest injustice" as used in RCr 10.26, has never been fully expounded in our previous opinion, there is one case, *Stone v. Commonwealth,* Ky., 456 S.W.2d 43 (1970) explaining that it applies where the appellate court "believes there may have been a miscarriage of justice."

When all is said and done, this case was retried because the federal courts decided that evidence was inadmissible hearsay which this court thought, unanimously, was admissible under firmly rooted hearsay exceptions. *Sherley v. Commonwealth,* 87–SC–243–MR (rendered October 15, 1987). While the ruling of the federal court controls because of its superior authority as a reviewing court exercising habeas jurisdiction, and while the defendant then had the right to have such evidence excluded at retrial upon proper objection, classifying use of such evidence as "manifest injustice" or a "miscarriage of justice" means going an additional step which seems inappropriate in present circumstances.

Although I might readily conclude that Sherley has suffered from ineffective assis-

tance of counsel, I cannot conclude there has been any "miscarriage of justice" here. Indeed, given the unobjected hearsay, and perhaps even without it, there is no reason to doubt that justice was done. Therefore, I concur in the results of this opinion, even though, had there been contemporaneous objections when hearsay was offered, I would reverse for prejudicial error.

One question remains: whether the motion in limine, to which the prosecutor agreed, sufficed to preserve the error. The practice of excluding evidence by motion in limine is now codified in KRE 103(d), which provides that a "motion in limine resolved by order of record is sufficient to preserve error for appellate review." I believe this new rule simply codifies what was existing practice before the rule, and therefore I would apply it here, where the prosecutor conceded the motion, if one could be reasonably certain the trial court was aware the substance of the motion was being violated. But here the nature of the violations were, on the one hand, tags on the exhibits such as would come in unnoticed by the trial court unless called to his attention, and, on the other hand, indirect, backdoor testimony plainly implying what Pauline Lang had to say while not repeating it, a method of introducing hearsay so subtle as to escape judicial notice if not called to the court's attention. One can hardly fault the trial court for failing to observe violations of the motion in limine, and to intervene *sua sponte* when these violations seemingly escaped the notice of defense counsel. Having decided this is not a case where the prosecutor's actions, however overreaching, may have caused a "miscarriage of justice," this is not a case where we should throw out the judgment to punish the prosecutor.

Thus, while as a general proposition (KRE 103(d)) requires no contemporaneous objection to preserve an error covered by a favorable ruling on a motion in limine, the unique circumstances of this case do not qualify for the general rule. We should not extend the reach of protection by motion in limine to cases where we cannot infer the trial court knew evidence excluded by motion in limine was being introduced anyway. Present circumstances called for the defense counsel to speak up if he wished to preserve error.

Thus, for the reasons stated, while disagreeing with most of the Majority Opinion, I concur in results.

STUMBO, Justice, dissenting.

Respectfully, I dissent from the majority opinion. My reasons for doing so are fully set forth in the concurring opinion of Justice Leibson. I only depart from that concurring opinion in its holding that there has been no manifest injustice here. RCr 10.26. I am fully aware of the consequences of waiver of reversible error.

In *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), Chief Justice Burger stated:

Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system.

*Estelle v. Williams*, 425 U.S. at 512, 96 S.Ct. at 1697. In that opinion Chief Justice Burger was addressing the duties of defense counsel to raise constitutional questions. Our Court of Appeals in *Salisbury v. Commonwealth*, Ky.App., 556 S.W.2d 922, 927 (1977), cited Chief Justice Burger's words and then observed that "[i]f a defendant's counsel could not waive constitutional issues by failing to object during the course of a trial, the trial judge would be placed in an impossible position."

In the *Salisbury, supra*, case the issue was whether it was palpable error for the Commonwealth to use the silence of the defendant therein following his receipt of the Miranda warnings, to impeach the defendant's credibility. Therein, the court held that because they could not determine whether defendant's trial counsel failed to object as a matter of trial tactics, or whether he was unaware of the possible objection, there was no demonstration of a palpable error. *Salisbury*, at 928. In point of fact, defendant's trial counsel not only made no objection in the *Salisbury* case, he delved into the subject of his client's silence in cross-examining the trooper who informed the defendant of his Miranda rights.

That being said and considered, however, in the case at bar, the inadmissible evidence permeated the trial. Not only did two police officers testify as to prohibited hearsay, but no less than three (3) physical exhibits containing written narratives of statements taken from the non-testifying, now deceased, victim were admitted into evidence for the jury's consideration. As the Sixth Circuit noted in its opinion when considering defendant's habeas petition:

> Although Kentucky has offered circumstantial evidence in the form of hair and fiber samples, a button found at Lang's house that has the same chemical composition as the buttons found on Sherley's jacket as well as the testimony of two jailhouse informants, the sole witness to the attack was Lang herself. The prosecution substituted the hearsay testimony of respectable individuals within the local community ... in place of the sometimes inconsistent and confused recollections of an eighty-two year old woman.

*Sherley v. Seabold,* 929 F.2d 272, 275 (6th Cir.1991). The result of the admission of this inadmissible hearsay in this case is an eighty-year sentence. The error was substantial and, in my opinion, manifest injustice has resulted from that error. I would reverse for a new trial.

STEPHENS, C.J., joins in this dissent.