# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

RENDERED: AUGUST 22, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0152-MR

TONY LEAR                                                      APPELLANT

V.

ON APPEAL FROM OHIO CIRCUIT COURT
HONORABLE THOMAS O. CASTLEN, JUDGE
NO. 12-CR-00150

COMMONWEALTH OF KENTUCKY                              APPELLEE

AND

2023-SC-0157-MR

VIRGINIA WHITFIELD                                           APPELLANT

V.

ON APPEAL FROM OHIO CIRCUIT COURT
HONORABLE THOMAS O. CASTLEN, JUDGE
NO. 12-CR-00148

COMMONWEALTH OF KENTUCKY                              APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Tony Lear and Virginia Whitfield (collectively, "Appellants") were convicted by an Ohio County Circuit Court jury of complicity to murder, complicity to arson, and two counts of complicity to first-degree assault. The Appellants were sentenced to 20 years each and appeal to this Court as a matter of right. KY.CONST. § 110(2)(b). The Appellants raise multiple issues on appeal: (1) they were entitled to directed verdicts on all charges; (2) several jury instructions violated their right to a unanimous verdict; (3) inadmissible character evidence denied them a fair trial; (4) the prosecutor violated his ethical duties by inserting personal knowledge during a witness's testimony; (5) the Commonwealth's opening statement was flagrant prosecutorial misconduct; and (6) cumulative error. Finding no reversible error, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 1999, first responders were dispatched to a fire at a trailer where Bobby Walton, Whitfield, and her three children resided.[1] Firefighters rescued Whitfield's seven-year-old daughter, Raquel and four-year-old daughter, Autumn from the trailer. Walton and Whitfield escaped out of a window of the trailer. Whitfield managed to get her nine-year-old son, Tylor out of another window on the opposite side of the trailer.

Autumn was hospitalized for about a month before dying from injuries sustained by the fire. Raquel underwent around 50 surgeries to address the scarring from burns all over her body, vocal cord damage from smoke

_____

[1] Walton died prior to charges being brought in this case.

2

inhalation, cataracts caused by steroids, and damage done to her cornea. Tylor burned his hand touching a doorknob during the fire and cut his leg on the window as he escaped from the trailer. He was hospitalized for two weeks following the fire. Whitfield also suffered injuries from the fire that resulted in her requiring a permanent tracheostomy tube.

Kentucky State Police arson investigator Rebekah Smith determined the fire originated from a couch dust cover stuffed inside the dryer vent. The investigation also revealed that the electrical breakers for the fire detectors were in the off position and the debris around the area of origin tested positive for a medium petroleum distillate[2]. Smith ruled out electrical and natural causes of the fire and determined that the ignition source for the fire was intentionally introduced. Smith concluded that the trailer fire was an arson. However, Smith's investigation did not materialize into any charges in 1999. The detective assigned to the case, Keith Payne, conducted several interviews but ultimately concluded not enough evidence existed to bring any charges.

In 2012, the case was re-assigned to Detective Michael Smith. He reviewed the evidence and interviews conducted by Detective Payne, took the case to grand jury, and obtained indictments for complicity to murder, complicity to arson, and two counts of complicity to first-degree assault against Lear and his two friends, Whitfield, and Bobby Napier. Napier entered a guilty

---

[2] "Examples of medium petroleum distillates include some charcoal starters, some paint thinners, and some mineral spirits[.]" *Madison v. Commonwealth,* No. 2023-SC-0127-MR, 2024 WL 1147467, * 3 (Ky. Mar. 14, 2024).

3

plea to complicity to arson in exchange for the dismissal of the murder and assault charges.

The Appellants went to trial in January 2023. Napier testified that Whitfield and Lear were present in the room when Walton discussed burning down the trailer for insurance money 7-10 days before the fire. Mark Baize also testified to having knowledge of Walton's delinquent trailer payments and his desire to burn down the trailer for insurance money.[3] Napier testified that in August 1999, he went with Walton, Whitfield, and Lear to Indiana to sell a stamp collection to get money for a trailer payment. Walton received a $500 advance from the owner for the stamp collection. Instead of using that money to contribute to Walton's delinquent trailer payments, Napier testified that he spent the money on drugs.

Raquel testified that on the night of the fire she recalled Whitfield, Walton, Lear, and an unknown woman being at the trailer. After being instructed to go to bed, Raquel remembered hearing the adults fighting and then going outside. Raquel also testified she heard loud popping noises before Walton and Whitfield came back into the trailer.

Linda Baker, Whitfield's neighbor, testified that she saw Lear, Walton, and Lefty Raymond at the trailer on the day of the fire looking at the dryer vent. Linda Baker's daughter, Amanda Baker, also testified to seeing Lear's truck

---

[3] Greentree Financial financed the purchase of the trailer for Walton and his mother, Anna Walton. Five days after the fire, Greentree foreclosed on the trailer. Investigators found handwritten documents in the master bedroom of the trailer that referred to the impending foreclosure.

idling near the trailer on the night of the fire. She also testified to hearing Walton banging on the trailer door alerting everyone inside of the fire.

After the fire, investigators found boxes containing children's winter clothing in a storage building behind the trailer. Napier testified that Whitfield asked him and Lear to move the boxes of clothing out of the trailer two days before the fire.

The Commonwealth presented expert testimony through David West, a former electrical inspector, certified fire investigator, and certified police instructor for the Kentucky State Police. West determined that the dryer was a victim of the fire, but not the cause. Linens and bedsheets were stuffed behind the dryer and had tested positive for medium petroleum distillate. West dismissed the theory of electrical arc mapping causing the fire because arc mapping is used on structures, not appliances.[4] To support the dismissal of arc mapping, West testified that he did not see electrical damage on the dryer, only thermal damage to the wires in the dryer's control panel.

The Appellants presented their own expert testimony through Dr. Gregory Gorbett, a professor in the fire, arson, and explosion investigation

---

[4] "Arc mapping is an interpretation of the spatial relationship of specific forensic artifacts on energized electrical conductors that were damaged by heat during the course of the fire. Those forensic artifacts are created when the heat of a fire causes an 'arc.'" Parisa Dehghani-Tafti & Paul Bieber, *Folklore and Forensics: The Challenges of Arson Investigation and Innocence Claims*, 119 W. VA. L. REV. 549, 560 (2016) (citing Nat'l Fire Prot. Ass'n, NFPA 921: Guide for Fire and Explosion Investigations (2014), p. 196).

program at Eastern Kentucky University. Gorbett testified that the origin of the fire was in the control panel and the medium petroleum distillate could have been from the clothing, sheets, shoes or newspaper ink found around the area. To support the conclusion that the control panel was the cause, Gorbett testified that insulation on the wires near the control panel welded itself to the steel appliance. Gorbett claimed that steel does not melt in normal temperature fires, so the wire welding to the dryer shows electrical activity. However, Gorbett could not pinpoint the exact failure point because the timers and thermostats were completely consumed by the fire. Due to the impossibility of determining the precise mechanism failure, Gorbett's ultimate conclusion for the cause of fire was "undetermined."

After six days of trial, the jury returned a guilty verdict on complicity to murder, complicity to arson, and two counts of complicity to first-degree assault against the Appellants. Following the jury's recommendation, the trial court sentenced Whitfield and Lear respectively to 20 years. The Appellants appeal their convictions to this Court as a matter of right.

## II.    ANALYSIS

The Appellants raise several errors: (1) they were entitled to directed verdicts on all charges; (2) several jury instructions violated their right to a unanimous verdict; (3) inadmissible character evidence denied them a fair trial; (4) the prosecutor violated his ethical duties by inserting personal knowledge during a witness's testimony; (5) the Commonwealth's opening statement was

6

flagrant prosecutorial misconduct; and (6) cumulative error. We discuss each argument in turn.

### A. *The trial court properly denied the motions for a directed verdict.*

The Appellants assert that the trial court erred in not granting their motions for a directed verdict on all charges. The Appellants moved for a directed verdict at the close of the Commonwealth's argument, and again at the close of the defense's argument. Both times, the trial court denied the motions for directed verdict. The Appellants contend the Commonwealth did not offer sufficient evidence that the Appellants aided in the burning of the trailer and the Commonwealth failed to prove Tylor suffered a serious physical injury. This Court agrees with the trial court and holds it committed no error in denying the motions for directed verdict.

On appellate review, the test of a directed verdict is "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Hatfield v. Commonwealth*, 250 S.W.3d 590, 596 (Ky. 2008) (quoting *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)). "Credibility and weight of the evidence are matters within the exclusive province of the jury." *Commonwealth v. Smith*, 5 S.W.3d 126, 129 (Ky. 1999). We address the motions for directed verdict on the complicity to murder and complicity to arson charge together, with the complicity to first-degree assault charge addressed separately.

7

**1.     The complicity to murder and complicity to arson charges.**

Appellants claim they were entitled to a directed verdict on the complicity to murder and complicity to arson charges because the Commonwealth failed to present enough evidence that showed the Appellants assisted in the plan to burn the trailer. The Appellants argue their presence during the initial conversation about the burning of the trailer did not display their endorsement of the plan, nor their complicity in executing the act. Appellants also claimed that the main evidence the Commonwealth focused on — (1) the dust cover from the couch in the dryer vent, (2) the linens behind the dryer, and (3) the existence of medium petroleum distillate — could easily be explained by alternative means. In addition, the Appellants pointed to the experts' testimonies, neither of which could firmly determine the fire's cause or who set the fire. Lastly, the Appellants raised issue with Napier and Baize's testimonies, pointing out that both individuals were spotty in their recall of the events from over two decades ago.

To be convicted of wanton murder, a person must wantonly engage in conduct which creates a grave risk of death to another and thereby causes the death of another under circumstances manifesting an extreme indifference to human life. KRS[5] 507.020(1)(b). Arson in the first degree requires a person, with intent to destroy or damage a building, to start a fire while the building is inhabited or occupied, or he has reason to believe the building is inhabited or occupied. KRS 513.020(1)(a). To be complicit to murder or arson involves

---

[5] Kentucky Revised Statutes.

8

either soliciting, commanding, or engaging in a conspiracy with another to commit the offense, or aiding or attempting to aid a person in either planning or committing the offense. KRS 502.020(1)(a)-(b).

To survive Appellant's motions for directed verdict, the Commonwealth needed only to "produce[] more than a mere scintilla of evidence to support the charges[.]" *Taylor v. Commonwealth*, 617 S.W.3d 321, 324 (Ky. 2020). However circumstantial, the Commonwealth presented ample evidence for a jury to reasonably find the Appellants were complicit in a plan to burn a trailer that led to Autumn's death. The Commonwealth presented witnesses who testified to the Appellants having knowledge of the plan to burn the trailer. Napier and Baize testified that Whitfield was present when Walton was talking about burning down trailer for insurance money. Napier also testified that Lear was present for that discussion as well.

The Commonwealth also presented evidence to prove that Lear was at the trailer on the day of the fire and was inspecting the area where the fire started later that night. Linda Baker testified that Lear, Walton, and Lefty Raymond were looking at the dryer vent on the day of the fire, and Amanda Baker testified to seeing Lear's truck idled outside the trailer for five to ten minutes the night of the fire before departing. Additionally, the Commonwealth provided evidence of Whitfield's assistance in the conspiracy. Napier testified that Whitfield requested help in moving clothing out of the trailer in the days leading up to the fire.

9

The Appellant's attempt to characterize Napier's testimony as "so extraordinarily implausible or inherently impossible as to render it manifestly without probative value or patently unworthy of belief" is unpersuasive.[6] The Appellants argue Napier's consistent use of drugs negatively affected his ability to remember the intricate details of conversations over twenty years ago. However, just because a witness has a clouded memory does not mean the witness's testimony should automatically be deemed implausible or impossible. And simply because testimony does not fall in a party's favor does not mean the testimony is wrought with fraudulence to the point that it must be swept away. Determining credibility and weighing the evidence is the task of the jury. *Smith*, 5 S.W.3d at 129.

The Commonwealth also presented evidence to show that the fire was intentionally set. David West determined the dryer to be the cause of the fire, not the control panel. The dryer had a dust cover stuffed in its vent. Linens and bedsheets were behind the dryer and evidence of medium petroleum distillate were found on the linens. In isolation, these may appear to be innocent, but in conjunction with the other evidence as a whole, they constitute evidence supporting a jury's reasonable finding of guilt.

The evidence shows the Appellants were motivated to commit the crime, took steps to prepare for the crime, and aided others in carrying out the crime.

---

[6] Appellants cite to *Ross v. Commonwealth,* for this proposition. 531 S.W.3d 471, 476 (Ky. 2017) (holding that on motion for directed verdict, "extraordinarily implausible or inherently impossible" testimony must be disregarded.).

10

The jury did not act unreasonably in handing down a guilty verdict of complicity to murder and complicity to arson. The trial court properly denied the Appellants motions for directed verdict on the complicity to murder and complicity to arson charges.

### 2. The complicity to first-degree assault charge.

Appellants argue they were entitled to a directed verdict on the first-degree assault charge because Tylor did not suffer a serious physical injury. Tylor suffered a burn to his hand from the fire and was hospitalized for two weeks. He did not suffer any prolonged disfigurement, outside of a scar on his ankle. Appellants contend that Tylor's scar is not a serious injury, his smoke inhalation is unproven, and his loss of consciousness in the trailer did not result in a substantial risk of death.

Assault in the first degree occurs when "[u]nder circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person." KRS 508.010(b). A serious physical injury is a "physical injury which creates substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, prolonged loss or impairment of the function of any bodily organ, or eye damage or visual impairment." KRS 500.080(19). More accurately, a serious physical injury to a child under the age of 12 at the time of injury can include, "[a]ny burn requiring hospitalization, debridement in the operating room, IV fluids, intubation, or admission to a hospital's intensive care unit[,]" and "[a]ny

11

injury requiring admission to a hospital's critical care unit[.]" KRS 500.080(19)(g), (p).

In this case, the trial court did not err in denying the motions for a directed verdict on the complicity to first-degree assault charges because the evidence shows the jury was reasonable in rendering a guilty verdict. Tylor, who was nine years old at the time of the fire, testified that in his attempt to escape a burning trailer, burned his hand on the trailer door. Then as he was trying to wake up his sisters and warn them of the blaze, he fell unconscious inside of the trailer that was engulfed in flames. When he was pulled from the trailer by his mother, he suffered a cut on his leg from the glass of the window. Tylor was then taken to the hospital and remained there for two weeks to receive medical attention due to his injuries.

Under KRS 500.080(19)(p), being admitted to the hospital because of a burn injury is a serious physical injury for children under the age of 12 at the time of the incident. Tylor was admitted into the hospital following the injuries he sustained from the trailer fire. Tylor's injuries meet the definition of a serious physical injury. Even if the Appellants dispute his stay in the hospital, the standard this court applies in reviewing motions for a directed verdict is whether "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt." *Hatfield,* 250 S.W.3d at 596. Tylor, who was 9 years old, suffered a serious physical injury when he was admitted to the hospital after sustaining a burn to his hand, smoke inhalation from the fire, and a cut to his leg. Upon viewing the evidence as a whole, this Court holds that the trial court

12

did not err in denying the motions for directed verdict for the Appellants of complicity to first-degree assault due to the serious physical injury Tylor sustained during the trailer fire.

### B. *The accomplice jury instructions were not palpable error.*

The Appellants argue the jury instructions violated the Appellants' right to a unanimous verdict in two different ways: (1) the arson instructions violated the unanimity requirement because the Commonwealth failed to prove Tylor suffered a serious physical injury and (2) all accomplice instructions violated the unanimity requirement because the instructions allowed the jury to find multiple acts were committed by the Appellants.

The first contention is easily resolved. We have already addressed that Tylor did suffer serious physical injury. So, the Appellants argument that the jury instructions violated the unanimity requirement based on the Commonwealth's failure to prove Tylor suffered a serious physical injury fails for the same reasons we did not find error in the trial court's refusal to grant a directed verdict on this issue.

Now to address the Appellants second argument regarding whether all accomplice instructions violate the unanimity requirement.

### 1. Unanimous verdicts.

Section 7 of the Kentucky Constitution guarantees that "a defendant cannot be convicted of a criminal offense except by a unanimous verdict." *Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009) (citing KY. CONST. § 7; *Cannon v. Commonwealth*, 291 Ky. 50, 163 S.W.2d 15 (1942); RCr 9.82(1)).

13

"[T]he Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense." *King v. Commonwealth,* 554 S.W.3d 343, 354 (Ky. 2018) (quoting *Miller v. Commonwealth,* 77 S.W.3d 566, 576 (Ky. 2002)), *overruled on other grounds by Johnson v. Commonwealth,* 676 S.W.3d 405, 417 (Ky. 2023). "[A] trial court is obliged to include some sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred." *Harp v. Commonwealth,* 266 S.W.3d 813, 818 (Ky. 2008).

"[A] general jury verdict based on an instruction including two or more separate instances of a criminal offence, whether explicitly stated in the instruction or based on the proof[,] violates the requirement of a unanimous verdict." *Johnson v. Commonwealth,* 405 S.W.3d 439, 449 (Ky. 2013), *overruled on other grounds by Johnson,* 676 S.W.3d at 417. However, "[a] 'combination' instruction permitting a conviction of the same offense under either of multiple alternative theories does not deprive a defendant of his right to a unanimous verdict, so long as there is evidence to support a conviction under either theory." *Robinson v. Commonwealth,* 325 S.W.3d 368, 370 (Ky. 2010).

The trial court in this case instructed the jury on several theories of liability for the charged offenses, including principal, accomplice, and a

14

combination "principal or accomplice." By way of example, the murder-accomplice instruction allowed the jury to convict Whitfield if it found:

> a. That in this county on or about September 2, 1999 and before the finding of the Indictment herein, either Tony Lear or Bobby Walton killed Autumn Raymond by setting a fire to her residence located at 8 Tanner Lane, Beaver Dam KY;

> AND

> b. That prior to the killing, the Defendant Virginia Whitfield had aided, solicited, counseled, commanded, or engaged in a conspiracy with Tony Lear or Bobby Walton to burn the trailer residence at 8 Tanner Lane, Beaver Dam, KY;

> AND

> c. That in so doing, the Defendant Virginia Whitfield was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of Autumn Raymond under circumstances manifesting an extreme indifference to human life.[7]

The jury found the Appellants guilty under this murder-accomplice instruction. Similarly, the jury found the Appellants guilty under the arson-accomplice instruction and the assault-accomplice instruction. The Appellants assert that these instructions run afoul of the unanimity requirements under *Johnson,* 676 S.W.3d 405, because the jury was presented with multiple different alternatives that make it impossible for the twelve jurors to agree on the same outcome. To illustrate this point further the Appellants argue the jury could find four separate outcomes based on the instructions:

---

[7] Lear's murder accomplice instruction mirrored Whitfield's instruction except their names were swapped. Same goes for the arson and first-degree assault accomplice instructions.

15

**(1)** Lear killed Autumn by setting the fire to her residence and Whitfield aided, solicited, counseled, commanded, or engaged in a conspiracy with Lear.

**(2)** Lear killed Autumn by setting a fire to her residence and Whitfield aided, solicited, counseled, commanded, or engaged in a conspiracy with Walton.

**(3)** Walton killed Autumn by setting a fire to her residence and Whitfield aided, solicited, counseled, commanded, or engaged in a conspiracy with Walton.

**(4)** Walton killed Autumn by setting a fire to her residence and Whitfield aided, solicited, counseled, commanded, or engaged in a conspiracy with Lear.

Any of the four outcomes above are possible for a jury to find Whitfield guilty as an accomplice. The Appellants contend that the impossibility of determining how the jury came to its conclusion is a violation of the Appellants right to a unanimous verdict, especially in option 2 and 4 above. They assert that both of those options are improper combination jury instructions because the accomplice liability statute under KRS 502.020 requires the Appellant to have "aided, solicited, counseled, commanded, or engaged in a conspiracy with" the person who committed the offense.

We agree with Appellant's latter argument. A unanimity error exists in the accomplice instructions because two of the four options presented to the jury ask them to decide on the factual element of whether the defendant "aided, solicited, counseled, commanded, or engaged in a conspiracy with" a person who did not commit the offense. Although complicity does not require the identification of a specific person, it does require another person to commit the

16

offense and for the complicit party to have aided the principal. KRS

502.020(1). Outcomes 2 and 4 cannot possibly, as a matter of law, be valid

combination instructions because the Appellants cannot be found guilty as

complicit when the extent of their assistance was to help a third party who in

turn helped the individual who committed the offense. KRS 502.020 envisages

a more direct connection between the principal and accomplice than what

options 2 and 4 present.

This Court in *Brown v. Commonwealth* addressed a similar issue. 553

S.W.3d 826, 838 (Ky. 2018). Brown was found guilty of complicity to first-

degree robbery. *Id.* at 830. The complicity to first-degree robbery jury

instruction stated:

> A. That in this county ... the Defendant, alone or in complicity with
> another stole money or jewelry or car from [O'Connor], or [the
> co-defendant] did so with the Defendant, intending that [the co-
> defendant] do so, aiding him or attempting to aid him or
> standing ready to aid him;

*Id.* at 838. Brown argued the inclusion of the three different types of property

the jury could choose from violated his right to a unanimous verdict. *Id.* This

Court rejected Brown's argument holding that principles of jury unanimity do

not require such specific fact-finding by the jury. *Id.* "[W]hether a unanimous

verdict violation stems from a 'combination jury instruction' first depends on

whether a particular kind of fact constitutes a 'factual element[] ... listed in the

statute that defines the crime.[']" *Brown,* 553 S.W.3d at 840 (quoting

*Richardson v. United States,* 526 U.S. 813, 817, 119 S.Ct. 1707, 1710 (1999)).

This Court found no unanimity violation because the statutes relevant to

17

Brown's complicity to first-degree robbery did not require identification of the exact property taken to be a "factual element [] … listed in the statute that defines the crime." *Brown*, 553 S.W.3d at 840.

Likewise in this case, the complicity statute relevant to Whitfield and Lear does not require identification of a specific person to be a "factual element [] … listed in the statute that defines the crime." *See* KRS 502.020(1)(a) ("A person is guilty of an offense committed by another person when … he [] [s]olicits, commands, or engages in a conspiracy with such other person to commit the offense."); *Little v. Commonwealth*, 553 S.W.3d 220, 227 (Ky. 2018) ("Notably, the complicity statute, KRS 502.020, does not require proof of the accomplice's identity as an element[]"). However, the present case is also distinguishable from *Brown* because options 2 and 4, mentioned above, create a situation where the jury finds the defendant was an accomplice to someone who did not commit the offense. For example, outcome 2 provides Lear committed the principal act of killing Autumn by setting a fire to her residence and Whitfield aided, solicited, counseled, commanded, or engaged in a conspiracy with Walton to burn down the trailer. In this outcome, Whitfield cannot be found to be an accomplice to Lear's act of setting the fire because she aided Walton. These instructions are substantively different from those in *Brown* because option 2 and 4 lack the factual element required of the complicity statute.

To avoid the outcome from option 2 and 4 the jury instructions should have removed the "or" and instead should have presented the jury with

18

separate instructions. To illustrate this further, provided below is an example of the amended murder accomplice instruction:

a. That in this county on or about September 2, 1999 and before the finding of the Indictment herein, **[either]** Tony Lear **[or Bobby Walton]** killed Autumn Raymond by setting a fire to her residence located at 8 Tanner Lane, Beaver Dam KY;

AND

b. That prior to the killing, the Defendant Virginia Whitfield had aided, solicited, counseled, commanded, or engaged in a conspiracy with Tony Lear **[or Bobby Walton]** to burn the trailer residence at 8 Tanner Lane, Beaver Dam, KY;

AND

c. That in so doing, the Defendant Virginia Whitfield was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of Autumn Raymond under circumstances manifesting an extreme indifference to human life.

A second instruction striking Tony Lear and leaving Bobby Walton would also be provided. Doing so removes the ability for the jury to find the Appellants guilty under outcomes 2 and 4. It also provides clarity for the jury to determine whom the defendant aided, solicited, counseled, commanded, or engaged in a conspiracy to burn down the trailer. When "the instruction does not specify which specific act it is meant to cover, we cannot be sure that the jurors were unanimous in concluding the defendant committed a single act satisfying the instruction." *Martin v. Commonwealth*, 207 S.W.3d 1, 7 (Ky. 2006)). Here, the jury instructions presented four scenarios with two of them allowing the jury to find the defendant was not the accomplice for the person who committed the act. Therefore, the instructions fail to specify who the

19

Appellants were accomplices to the offenses committed and violate their Appellants right to a unanimous verdict.

### 2.    No palpable error.

Our analysis continues because this specific unanimity argument is unpreserved and the Appellants request we review it for palpable error.  RCr[8] 10.26.

"Under RCr 10.26, an unpreserved error may generally be noticed on appeal *if* the error is 'palpable' and *if* it 'affects the substantial rights of a party.'" *Martin v. Commonwealth*, 409 S.W.3d 340, 344 (Ky. 2013).  "Even then, relief is appropriate only 'upon a determination that manifest injustice resulted from the error.'" *Id.* (quoting RCr 10.26).  "For an error to rise to the level of palpable, 'it must be easily perceptible, plain, obvious and readily noticeable.'" *Doneghy v. Commonwealth*, 410 S.W.3d 95, 106 (Ky. 2013) (quoting *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006)).  "A palpable error must be so grave that, if uncorrected, it would seriously affect the fairness of the proceedings." *James v. Commonwealth*, 681 S.W.3d 60, 69 (Ky. 2023) (quoting *Davis v. Commonwealth*, 620 S.W.3d 16, 30 (Ky. 2021)). The Appellants argue the jury instructions are palpable error because the weight of the evidence at trial was scant and circumstantial.  The Appellants assert under this Court's decision in *Johnson v. Commonwealth,* they are

---

[8] Kentucky Rules of Criminal Procedure.

20

entitled to a new trial based on the erroneous jury instructions.  676 S.W.3d 405 (Ky. 2023).

In *Johnson,* this Court held no palpable error for erroneous jury instructions.  676 S.W.3d at 414-18.  "In all cases presenting an unpreserved error regarding a unanimous jury, the courts must 'plumb the depths of the proceeding' and scrutinize the factual idiosyncrasies of the individual case."  *Id.* at 417 (citing *Martin*, 207 S.W.3d at 3).  "That includes a consideration of the weight of the evidence."  *Johnson*, 676 S.W.3d at 417.  Reversal of the Appellants' convictions are warranted only if, upon review, a court can conclude "the error is so manifest, fundamental, and unambiguous that it threatens the integrity of the judicial process."  *Martin*, 207 S.W.3d at 5.

Here, the Commonwealth's theory throughout trial was that Walton, Lear, and Whitfield all played a part in burning down the trailer.  Testimony from several witnesses placed Whitfield and Lear in the room when Walton discussed burning down the trailer for insurance money.  Whitfield moved boxes of clothing out of the trailer a few days before the fire with the help of Lear.  Neighbors placed Lear at the trailer on the day of the fire, inspecting the dryer vent with Walton.  Expert testimony supported the theory of an intentionally caused fire from items stuffed in and around the dryer.  Although no evidence can directly point to an individual who started the fire, enough evidence was presented by the Commonwealth to show the Appellants aided, solicited, counseled, commanded, or engaged in a conspiracy with each other to burn down that trailer.  The accomplice instructions mirror such evidence.

21

The instructions provide the jury the ability to decide whether the defendant engaged with the other individuals to burn down the trailer.

After reviewing the evidence, we conclude that the accomplice instructions were not "so manifest, fundamental, and unambiguous that it threatens the integrity of the judicial process." *Johnson*, 676 S.W.3d at 418 (quoting *Martin*, 207 S.W.3d at 5). With the simple modification of the instruction as provided above, the instructions would have eliminated the concerning outcomes. The Commonwealth presented evidence to support that both Whitfield and Lear were accomplices to the whoever started the trailer fire. These instructions are not "so egregious that it jumps off the page … and cries for relief." *Chavies v. Commonwealth*, 374 S.W.3d 313, 323 (Ky. 2012) (quoting *Alford v. Commonwealth*, 338 S.W.3d 240, 251 (Ky. 2011)). Therefore, no palpable error exists with the accomplice jury instructions.

### C. *Appellants received a fair trial.*

A criminal defendant "is guaranteed a fair trial[,]" but "[t]his does not mean, however, a perfect trial, free of any and all errors." *McDonald v. Commonwealth*, 554 S.W.2d 84, 86 (Ky. 1977). The Appellants assert they did not receive a fair trial because the Commonwealth improperly elicited testimony about whether Lear and Whitfield had a sexual relationship before the trailer fire. Whitfield, individually, also argued that she was denied a fair trial because the Commonwealth inquired about child abuse allegations against her. She contends the testimony violated KRE[9] 404 because the

---

[9] Kentucky Rules of Evidence.

22

testimony was irrelevant and unduly prejudicial, and the error was of such substantial prejudice that the Appellants convictions should be reversed for a new trial. We disagree.

The Appellants concede that this issue is partially unpreserved. The issue is partially preserved because Whitfield objected to the testimony about the child abuse allegations and objected to a conclusory comment made about the Appellants' sexual relationship during Napier's testimony. The unpreserved error concerns Baize's testimony whether Whitfield and Lear were having a sexual relationship. We will address the child abuse allegations first and then address the sexual relationship.

## 1. The child abuse allegations.

Whitfield argues the trial court's admonition to disregard the testimony about the child abuse investigation was not adequate to "unring the bell" of prejudice. Whitfield asserts that the jury was unlikely to forget that Whitfield was investigated for child abuse even though the trial court told the jury the evidence was not competent or relevant to the case.

The Commonwealth asked Rebekah Smith about a clothing belt that was found during an execution of a search warrant. Smith testified that the belt was in connection to an allegation of child abuse and repeated her answer upon a follow up question by the Commonwealth. A few questions later, the trial court intervened and asked to give an admonition, to which the defense counsel agreed. The court then proceeded to admonish the jury informing them that:

23

The comment you just heard about the belt is not competent or relevant to this case at all. You are admonished to disregard that in its entirety. Put it out of your mind and remember your oath to try this case according to the evidence in this case and that is not evidence.

"[A]n admonition is usually sufficient to cure an erroneous admission of evidence, and there is a presumption that the jury will heed such an admonition." *St. Clair v. Commonwealth*, 455 S.W.3d 869, 892 (Ky. 2015) (quoting *Matthews v. Commonwealth*, 163 S.W.3d 11, 17 (Ky. 2005)). Whitfield claims the elicited evidence overcomes such presumption. An admonition is not sufficient,

(1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition *and* there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant; or (2) when the question was asked without a factual basis *and* was "inflammatory" or "highly prejudicial."

*Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003) (citations omitted).

Here, neither circumstance applies because nothing indicates that the jury would be unable to follow the court's admonition and the question was not highly prejudicial or inflammatory. The Commonwealth did not ask about the specifics of the child abuse allegations. Further, the Commonwealth made the court aware that he was not even aware of the child abuse allegation and that was not the answer he was seeking with his line of questioning. Therefore, the trial court's admonition cured the error.

24

## 2. The Appellants' sexual relationship.

The Appellants argue they were denied a fair trial based on testimony regarding whether they were in a sexual relationship before the fire. The Appellants partially preserved this issue and request we review the unpreserved testimony for palpable error. RCr 10.26. We will review the preserved evidentiary issue under an abuse of discretion standard. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000).

KRE 404(b) allows evidence of other crimes, wrongs or acts if its "offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." KRE 404(b)(1). "[T]o determine if other bad acts evidence is admissible, the trial court should use a three-prong test: (1) Is the evidence relevant? (2) Does it have probative value? (3) Is its probative value substantially outweighed by its prejudicial effect?" *Leach v. Commonwealth*, 571 S.W.3d 550, 554 (Ky. 2019) (citing *Purcell v. Commonwealth*, 149 S.W.3d 382, 399-400 (Ky. 2004)).

"The first prong of the test is whether the proffered evidence is relevant for a purpose other than criminal disposition. . . . In reviewing relevance, courts must determine that the 'other bad acts' evidence is offered to prove material facts that are actually in dispute." *Id.* The Commonwealth contends the relationship is relevant because it provides a possible motive for Lear to assist with the crime. Motive is one of the specifically enumerated exceptions set forth in KRE 404(b)(1) and we agree that the evidence speaks to that purpose. The jury may have been left to speculate Lear's motive for assisting

25

with the arson had the evidence not been included. Nothing indicates Lear ever planned to receive a cut of the insurance money, especially since the arson was conducted for Walton to catch up on missed trailer payments, not Lear. Lear also did not appear to have a special relationship with Tylor, Raquel or Autumn. Despite the Appellants' contention to the contrary, the testimony does not attack Lear or Whitfield.

Instead, the information "make[s] the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. The testimony detailing the potential relationship between Lear and Whitfield was not elicited to attack the Appellants' characters. Evidence of the sexual relationship was put forward to display a possible motive for Lear and in doing so made the existence of the fact that Lear assisted in committing the arson more probable and therefore relevant.

"After determining relevancy, the trial court must determine if the evidence of the [bad act] is sufficiently probative of its commission by the accused to warrant its introduction into evidence." *Leach*, 571 S.W.3d at 554. Evidence is probative "if the trial judge believes 'the jury could reasonably infer that the prior bad acts occurred and that [the defendant] committed such acts.'" *Id.* (quoting *Parker v. Commonwealth*, 952 S.W.2d 209, 214 (Ky. 1997)). Two witnesses corroborated that the Appellants were in a sexual relationship. Napier testified to what he observed about the Appellants' physical relationship. Baize believed the Appellants to be in a sexual relationship but

26

never saw them engaged physically together. Having two separate witnesses testify to the relationship assists in the probative nature of the evidence for a jury to reasonably infer the prior acts occurred.

As to the prejudicial nature of the "other bad acts" evidence, "only if the potential for undue prejudice substantially outweighs the probative value of the evidence must it be excluded." *Leach*, 571 S.W.3d at 554. The Appellants argue the discussion of sexual infidelity is unduly prejudicial. The Commonwealth states that although the testimony was potentially prejudicial, it did not fall into the realm of unduly prejudicial information. The case at hand concerns the Appellants' conduct in committing arson for insurance money. An alleged sexual relationship between Lear and Whitfield was used to display a potential motive for Lear to help commit that arson. Otherwise, the relationship between Lear and Whitfield, as well as the relationship between Walton and Whitfield, had very little impact on the case. Therefore, the testimony was not unduly prejudicial to the Appellants. No error occurred in allowing the jury to hear about the Appellants' possible sexual relationship.

### D. *No palpable error occurred during the prosecutor's improper assertions during Baize's testimony.*

Appellants argue the Commonwealth committed palpable error when the prosecutor inserted himself as a witness during Baize's testimony. Specifically, they argue the prosecutor erred when he repeatedly asked if Baize remembered talking to the prosecutor and Detective Michael Smith before trial about why

27

the Appellants came to Baize's home.  This issue is unpreserved, and the

Appellants request we review it for palpable error.  RCr[10] 10.26.

In *Holt v. Commonwealth*, the prosecutor asked a witness four times to

tell the jury something the witness had told the prosecutor directly.  219

S.W.3d 731, 733-34 (Ky. 2007).  The witness had previously told the prosecutor

that the defendant confessed to committing the robbery but would not say that

on the stand.  *Id*.  This Court reversed the Appellant's convictions and stated,

> What transpired here is more than some technical violation of
> evidence rules or proper conduct by lawyers.  By means of the
> prosecutor's assertions, statements attributed to Appellant were
> placed before the jury without any witness saying that Appellant
> made such a statement.  This goes to the heart of fundamental
> fairness and due process of law.

*Id*. at 739.  The Commonwealth asked Baize four times whether he

remembered speaking to himself and Detective Smith before trial.  The

prosecutor's repeated questions asserting himself as a fact witness to Baize's

testimony was improper and under harmless error review would be reversible.

However, it does not raise to level of palpable error.

In *Dillon v. Commonwealth*, the prosecutor attempted to impeach a

witness by introducing his own interaction.  475 S.W.3d 1, 20-22 (Ky. 2015).

This Court held the prosecutor's conduct as improper but not palpable error.

*Id*. at 22. The Court held the prosecutor's question to be problematic because

he injected his own unsworn statement instead of asking the witness whether

---

[10] Kentucky Rules of Criminal Procedure.

he signed a previous statement. *Id.* at 21. Further, the prosecutor in *Dillon* did not have a third-party present to witness the statements to later offer in as impeachment evidence. *Id.* at 20. Nevertheless, the error committed by the prosecutor was not palpable error because it did not create a manifest injustice. *Id.* The Court held the prosecutor's improper impeachment had little substantive effect in the case and the Court could not say it "caused a repugnant and intolerable outcome or probability of a different result or that it was an error so fundamental as to threaten Dillon's entitlement to due process of law." *Id.* at 22.

Here, the prosecutor erred when he asked Baize repeatedly whether he remembered speaking with him and Detective Smith before trial. However, the error does not rise to the level of palpable error because the question did not have a substantive effect on the proceedings. The line of questioning was about the Appellants' sexual relationship, not whether the Appellants confessed to committing an offense. Further, the prosecutor did not make a statement contradictory to Baize but was preparing to impeach him if he did contradict his previous statement. The prosecutor also had a third party, Detective Smith, whom he could call as witness to impeach Baize. So, although improper, the prosecutor's repeated assertions into the witness's testimony were not palpable error.

### E. The Commonwealth's opening statement was proper.

Appellants argue the Commonwealth engaged in flagrant prosecutorial misconduct during its opening statement. Specifically, they argue that the flagrant prosecutorial misconduct occurred when the prosecutor told the jury,

> But the most important thing to keep in mind throughout the entire trial is that we'll get into the minutia of certain details. We'll get into this witness and that witness. We'll get into this piece of evidence and that piece of evidence, and it's very easy to get distracted and to forget why we're ultimately here. And ultimately why we're here is because a four-year-old child died in a fire . . . That beautiful life's gone forever. It's easy to get distracted as we go through this case because we'll consider a lot of evidence. But that's the image you need to remember because that's why we're here.

"Prosecutorial misconduct is 'a prosecutor's improper or illegal act involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment.'" *Commonwealth v. McGorman*, 489 S.W.3d 731, 742 (Ky. 2016) (quoting *Noakes v. Commonwealth*, 354 S.W.3d 116, 121 (Ky. 2011)). "If the misconduct is objected to, we will reverse on that ground if proof of the defendant's guilt was not such as to render the misconduct harmless, and if the trial court failed to cure the misconduct with a sufficient admonition to the jury." *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010). However, if no objection is made, the Court "will reverse only where the misconduct was flagrant and was such as to render the trial fundamentally unfair." *Id.*

No contemporaneous objection was made, and Appellants concede that the issue is unpreserved. Because the issue is unpreserved, we will reverse only if the conduct was both flagrant and constitutes palpable error resulting

30

in manifest injustice. RCr[11] 10.26; *Matheney v. Commonwealth,* 191 S.W.3d 599, 606, 607 n.4 (Ky. 2006).

To determine whether improper conduct is flagrant and requires reversal, this Court weighs four factors: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Brafman v. Commonwealth,* 612 S.W.3d 850, 861 (Ky. 2020) (citing *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016); *Mayo v. Commonwealth*, 322 S.W.3d 41, 55 (Ky. 2010)). "We look at the claimed error in context to determine whether, as a whole, the trial was rendered fundamentally unfair." *Brafman,* 612 S.W.3d at 861 (citing *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006)).

The Appellants assert that the prosecutor's comments during its opening statement meet all four factors employed by this Court to warrant reversal. Regarding the first factor, the Appellants argue the prosecutor misled the jury's duty to assess the evidence by telling them to focus on Autumn's death rather than being distracted by the different pieces of evidence.

The Appellants compare the Commonwealth's opening statement to the prosecutorial misconduct committed in *Barrett v. Commonwealth,* 677 S.W.3d 326 (Ky. 2023). But this case is distinguishable. In *Barrett,* "the prosecutor told the jury that the 'presumption of innocence, I would submit to you is gone

---

[11] Kentucky Rules of Criminal Procedure.

because you've heard the proof beyond a reasonable doubt.'" *Id.* at 332. This Court held the Commonwealth's comment was improper "because it suggest[ed] that at closing argument the defendant [was] no longer presumed innocent, which is simply not true." *Id.* at 333. "A prosecutor cannot argue that the presumption of innocence is gone in his or her closing argument because it implies the jury should ignore the defendant's presumption of innocence when it begins its deliberations." *Id.*

Here, the prosecutor did not suggest the defendants' presumption of innocence was gone. The prosecutor told the jury they would hear from several witnesses about different pieces of evidence and how easy it can be to get distracted. The prosecutor then highlighted the death of Autumn to bring to focus the victim of the case. This case involved different arson experts testifying to the technical details about the cause of a trailer fire. The prosecutor addressed the detail-oriented trial while also acknowledging the bigger picture of the seriousness of the charged crimes. The Commonwealth did not mislead the jury or prejudice the accused during its opening statement.

As to the second factor, Appellants argue the comments were extensive because the prosecutor told the jurors to not be distracted by evidence twice in a two-minute period at the outset of its opening. Twice in two minutes is a fraction of the Commonwealth's opening statement. In total, the opening went on for about 30 minutes. This Court has held that a few sentences that were spoken in the middle of the Commonwealth's 55-minute-long closing argument were isolated because the comments were not repeated or even emphasized.

32

*Hall v. Commonwealth*, 645 S.W.3d 383, 399 (Ky. 2022). Here, the Commonwealth's comments were made briefly at the beginning of the opening statement when the prosecutor was providing background for the upcoming several days of trial. In relation to the entire opening statement, the comments were isolated.

The Appellants argue the third factor also favors reversal because the prosecutor deliberately placed the comments in front of the jury. The Commonwealth concedes the comments were deliberately placed before the jury. But the Commonwealth asserts the prosecutor was within his right to highlight the victim and her tragic death in its opening statement under *Sherley v. Commonwealth*, 889 S.W.2d 794, 799 (Ky. 1994).

In *Sherley*, this Court held no reversible error when the prosecution in its opening statement "showed the jury an enlarged color photograph of the first victim, 81-year-old prosecuting witness as she lay in a hospital bed recovering from her injuries." *Id.* "Such photographs of the injuries of a victim are admissible to show how those injuries were sustained." *Id.* (citing *Salisbury v. Commonwealth*, 417 S.W.2d 244 (Ky. 1967)). Here, the prosecutor did not show a photograph of Autumn to the jury. He referred to her during his opening statement while he was setting the background for the case. Because the prosecutor deliberately placed the comments in front of the jury, this factor tilts in favor of the Appellants.

Lastly, the Appellants argue the fourth factor weighs in their favor because the strength of evidence against the accused was weak. The

33

Commonwealth's case involved much circumstantial evidence, and over twenty years passed between the fire and the trial. The trial lasted six days with over twenty different witnesses. Napier and Baize were key witnesses who placed the Appellants in the room where Walton discussed burning down the trailer for insurance money. Neighbors corroborated Lear being at the trailer on the day of the fire and looking at the dryer vent. On top of the witnesses, expert testimony from David West presented scientific evidence to support an intentionally set fire. This factor weighs in favor of the Commonwealth.

Having found only one of the four factors in favor of the Appellants, we cannot conclude that the Commonwealth's comments in the opening statement about focusing on Autumn to be so egregious that it undermined the essential fairness of the Appellants' trial. *Hall*, 645 S.W.3d at 400. For all the reasons discussed above, no error occurred during the Commonwealth's opening statement.

### F. Cumulative error did not occur.

Under the cumulative error doctrine, "multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). "Where, as in this case, however, none of the errors individually raised any real question of prejudice, we have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice." *Id.* (citing *Furnish v. Commonwealth*, 95 S.W.3d 34, 53 (Ky. 2002)). Here, two errors occurred at trial, the accomplice jury instructions presented the jury

34

with impossible accomplice theories, and the prosecutor improperly asserted himself as a witness during Baize's testimony. However, considering all the evidence produced at trial, these errors did not render the trial fundamentally unfair.

## CONCLUSION

For the foregoing reasons, the Ohio Circuit Court's judgment is affirmed.

All sitting. VanMeter, C.J.; Bisig, Conley, Keller, Lambert and Nickell, JJ., concur. Thompson, J., concurs in result only without separate opinion.


COUNSEL FOR APPELLANT
TONY LEAR:

Erin Hoffman Yang
Assistant Public Advocate


COUNSEL FOR APPELLANT
VIRGINIA WHITFIELD:

Aaron Reed Baker
Assistant Public Advocate

Kathleen Schmidt
Assistant Public Advocate


COUNSEL FOR APPELLEE
COMMONWEALTH OF KENTUCKY:

Russell Coleman
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General